In the Matter of NEW YORK STATE GUERNSEY BREEDERS CO-OPERATIVE, INC., Appellant, against HOLTON V. NOYES, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

HUGH SCOTT et al., Interveners, Respondents.

Argued October 7, 1940; decided November 19, 1940.

*Irving G. Hubbs, Merritt A. Switzer* and *Henry S. Manley* for appellant.

*Robert G. Blabey* and *Milo R. Kniffen* for respondent.

*Harry D. Suitor* for interveners, respondents.

*Edward Schoeneck* for independent co-operatives, *amici curiæ.*

*Francis L. McElroy* for Metropolitan Milk Producers Bargaining Agency, *amicus curiæ.*

SEARS, J. New York State Guernsey Breeders Co-operative, Inc., challenges, in a proceeding under article 78 of the Civil Practice Act, Official Order No. 127, promulgated by the Commissioner of Agriculture and Markets on September 19, 1938. The order was issued under the authority vested in the Commissioner by sections 258-k to 258-n, inclusive, of the Agriculture and Markets Law (Cons. Laws, ch. 69, added L. 1937, ch. 383 — The Rogers-Allen Act).

The Niagara Frontier Co-operative Milk Producers Bargaining Agency, Inc., representing approximately eighty-five per cent of the milk producers in the production area supplying the Niagara Frontier Marketing Area, informally petitioned the Commissioner of Agriculture and Markets to conduct a public hearing upon a proposed milk marketing order which had been unanimously approved by the delegates of the bargaining agency. The petitioner in this proceeding was a member of the bargaining agency and its delegate had approved the proposed order and the petitioning of the Commissioner for a hearing thereon.

The proposed order provided, among other things, for (1) the classification of milk received by marketers at plants to supply the marketing area as follows: Class 1, milk which leaves the plant where received as whole milk; Class 2A, milk which leaves the plant where received in the form of fluid cream; Class 2B, milk used in the manufacture of ice cream, and purposes not otherwise described; Class 4A, milk made into butter; (2) the establishment of minimum prices for milk used in each class; (3) the fixing of a uniform price (subject to certain differentials) to be paid by marketers for all milk regardless of the use made thereof; (4) the creation of an equalization fund into which each marketer would pay the amount of the purchase price

in excess of the uniform price, and from which each marketer would draw for payment to its producers the amount by which the purchase price fell below the uniform price, " so as to bring all lower rates of payment up to the uniform price," and to reduce all higher rates to the uniform price. Price differentials were provided for butterfat content, market service, and for milk sold as Guernsey milk. The differential in favor of milk sold as Guernsey milk was thirty cents per hundredweight, to be paid by the marketers.

The Commissioner gave the required notice of the hearing upon the proposed order. At the hearing petitioner's representative and business manager testified that petitioner had forty-five members in the marketing area, " a drop in the bucket " as there were over 3,000 producers in the area; that the presentation he was about to make was not at all in opposition to the order or to any principle involved in it; that the provision in the proposed order for a premium of thirty cents per hundredweight for milk sold as Guernsey milk placed his association under a handicap in selling the milk of its forty-five members in this market; that Guernsey milk is different from all other milk, not only in its richness in butterfat, but also in its fine color, flavor, vitamin activity, minerals and other characteristics; that petitioner, among others, had identified its milk by the registered trade-mark, " Golden Guernsey "; that its superiority as a table milk had been advertised in a national way; that petitioner had devoted a great deal of money and effort to " build up " for Golden Guernsey milk a definite place in the fluid markets in each city; that it costs more to produce milk from Guernsey cows than from some other breeds; and that the provision in the proposed order for Guernsey milk was not in the interest of consumers and might under some circumstances be very much against the interest of Guernsey producers. On the basis of these facts, he requested " That the Commissioner amend this proposed order by striking out from it the provision imposing an extra thirty cents per hundredweight ' for milk sold as Guernsey milk ' and insert therein a provision somewhat like that requested for the New York City order which will exempt from equalization milk of certain breed characteristics and market identity."

It appears that petitioner at the hearing opposed the premium on Guernsey milk under the equalization plan, primarily because, to its collective mind, complete exemption would be more advantageous and equitable. It was not averse to separate treatment of Guernsey milk. Indeed, no one was. Another spoke in opposition to the premium, but she also opposed the entire equalization plan.

After the hearing and after a referendum that showed that over seventy-five per cent of the producers affected favored it, the Commissioner promulgated Official Order 127. The final order conformed with the proposed order in essentials, except that no provision whatsoever was made in it for a price differential for milk sold as Guernsey milk. The differential of thirty cents per hundredweight was struck out as requested, but the correlated alternative asked by petitioner, complete exemption, was not inserted.

The order announcing the adoption and promulgation of Official Order No. 127, after reciting the steps taken, reads:

" Now, therefore, upon the basis of the testimony given at such public hearing, and upon information otherwise obtained concerning conditions existing in the milk industry in the Niagara Frontier Milk Marketing Area, I do hereby find:

" 1. That conditions exist in the Niagara Frontier Milk Marketing Area so affecting the orderly marketing of milk in such area that it is in the public interest that prices of milk in such area be regulated; and

" 2. That the public interest requires that the public policy declared in Section 258-k of this chapter shall be made effective; and

" 3. That upon the basis of a referendum conducted by me, Official Order No. 127 regulating the handling of milk produced in the production area for the said Niagara Frontier Milk Marketing Area is favored by more than seventy-five per centum of the producers of milk produced in such production area; and

" I do hereby direct that the provisions of said Official Order No. 127 shall be effective on and after 12:01 A. M. Eastern Standard Time, October 1, 1938, * * * "

These findings satisfy, in general, the prerequisites to the issuance of such an order specified in the statute. (L. 1939, ch. 760, § 258-m, subd. 1.) The preamble to the findings, quoted above, was taken from the statute. The words " upon information  *  *  *  otherwise obtained " have been deleted from the section since the promulgation of the original order, and presumably the order has been repromulgated by legislative authorization solely upon the basis of the testimony given at the public hearing. (L. 1939, ch. 760, § 3, amending § 258-k of the Agriculture and Markets Law — Order of the Commissioner of Agriculture and Markets, June 28, 1939.)

The statutory power of the Commissioner to grant differentials is contained within the provision relating to the equalization of prices, subdivision 6 of section 258-m of article 21 of the Agriculture and Markets Law (added L. 1937, ch. 383) which we held to be constitutional in *Noyes v. Erie & Wyoming Farmers Co-op. Corp.* (281 N. Y. 187). The section reads, in part, as follows: " If approved by seventy-five per centum of the producers affected, any order  *  *  *  may provide for an equalization of prices to all producers of the production area of the market affected so that each producer or co-operative association shall receive the same base price for all milk delivered subject to reasonable differentials for quality and location and for services."

The essence of the scheme is equality. Realizing that this might not be attained by a more general provision, the Legislature gave the Commissioner power to determine the existence of special circumstances and to grant differentials. That the Commissioner, under this section, has the power to grant a differential where it is shown that there exists a distinct difference in production costs, quality or marketability of milk of one breed of cows from that of other breeds, cannot be doubted. Otherwise, in nominal equality may lurk actual inequalities. As an issue in relation to the existence of a difference in the production costs, quality and marketability of Guernsey milk and of milk of other breeds, that could not be measured by butter fat content alone, was presented at the hearing, the order promulgated by the Commissioner is a determination by omission that

such a difference does not exist or that it is immaterial. The determination thus made is judicial in nature rather than administrative. (*Matter of Nash* v. *Brooks,* 276 N. Y. 75; *Matter of N. Y. Edison Co.* v. *Maltbie,* 271 N. Y. 103.) The mandate for a public hearing and notice thereof imports the obligation to consider whatever testimony is given. In order that the basis for the determination may be definite and certain where issues of fact are presented and in order that the determination may be reviewed, a duty is imposed upon the determining body or officer to set forth the factual grounds of the decision. (*Matter of N. Y. Water Service Corp.* v. *Water P. & C. Comm.,* 283 N. Y. 23.) This is particularly so where the relief sought is denied. (*Matter of Elite Dairy Products, Inc.* v. *Ten Eyck,* 271 N. Y. 488.) Here, the only express findings made by the Commissioner related to the necessity for the order and its approval by more than seventy-five per centum of the producers. The sufficiency of these findings as meeting the statutory requirement is not questioned, but their adequacy to determine the issue of fact raised by the petitioner's showing at the hearing is questioned. No mention is made in the order of the specific conditions brought out by the testimony of petitioner's representative. We do not know what circumstances prompted the Commissioner to reject this seemingly uncontroverted testimony, nor do we even know that it was considered. It may well be that the Commissioner concluded that petitioner desired exemption or nothing, and doubted whether he had power to grant such an exemption. If so, his doubt found support in the later amendment to section 258-m of the Agriculture and Markets Law (L. 1939, ch. 760, § 2, effective June 7, 1939), to wit: " Such equalization shall include milk of all grades and produced by all breeds of cows." (Subd. 6.) However, we conclude that petitioner's attitude does not justify this conclusion. Petitioner brought its special problem to the attention of the Commissioner and coupled its opposition to the method proposed to solve this problem with a request that it be completely exempted from participation in the equalization plan. To ignore the issue presented upon a doubtful interpretation of peti-

tioner's statement of its case at the hearing, is contrary to the spirit of the law and imperils the operation of the plan. It was the Commissioner's duty to determine the existence of conditions affecting the equitable application of the proposed order, and to make appropriate modifications shown by the evidence to be necessary. In any event, petitioner, upon this record, was entitled to know the basis of the Commissioner's order in so far as it denied a differential in favor of milk sold as Guernsey milk.

Nor do we find in this record any equitable reason for silencing petitioner in the assertion of its rights. Opposition to the proposed order in its specific application was consonant with an indorsement of its promulgation in general. But even if there were an inconsistency, there was certainly no change in position in reliance upon the previous conduct of petitioner.

The absence of adequate findings of fact in respect to the uncontroverted evidence introduced at the hearing upon the proposed order by petitioner compels us to reverse the order of the Appellate Division and the order of the Commissioner of Agriculture in so far as they deny a differential in favor of milk sold as Guernsey milk, and to remit the matter to the Commissioner solely in respect thereto with instructions to make the necessary findings of fact, either upon the evidence introduced or upon the evidence that may be introduced upon another hearing, if the Commissioner deems one desirable, with leave to any party appearing, if another hearing is had, to introduce new evidence; and with instructions to make any necessary adjustment of petitioner's obligations and benefits under the equalization provision in the order in accordance with whatever determination the Commissioner may make; otherwise, the orders should be affirmed, all without costs.

The orders should be modified in accordance with this opinion and as so modified affirmed, without costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.