In the Matter of EUGENE M. DUSINBERRE et al., Doing Business as SENECA GUERNSEY FARMS, Respondents, against HOLTON V. NOYES, as Commissioner of Agriculture and Markets of the State of New York, Appellant.

Argued October 7, 1940; decided December 3, 1940.

*Robert G. Blabey* and *Milo R. Kniffen* for appellant.

*Henry S. Manley* for respondents.

LEHMAN, Ch. J.   The Commissioner of Agriculture and Markets has rejected an application of Eugene M. Dusinberre of Geneva, New York, and Nathan Oaks, Jr., of Oaks Corners, New York, " for a license to handle, sell, or distribute milk, pursuant to the provisions of Article 21 of the Agriculture and Markets Law." The Appellate Division has annulled the determination of the Commissioner on the ground that it is not supported by any credible evidence and is purely arbitrary and capricious. Two judges dissented.

Each of the applicants owns a farm on which he produces Guernsey milk.   Dusinberre's farm is one and one-half miles from the city of Geneva.   The average daily production of his farm is about two hundred quarts of milk. He sells that milk to White Springs Dairy, a milk dealer in Geneva.   The farm belonging to Oaks is about five miles from the Dusinberre farm.   The average daily production of his farm is about four hundred quarts.   With the exception of about eight or nine gallons daily, which Oaks sells at his farm to retail customers, the milk produced on the Oaks farm is shipped to Syracuse.

The applicants have proposed to erect, equip and operate a small pasteurizing and bottling plant on the Dusinberre farm which, it was estimated, will cost $6,000 or $6,500. The applicants have signed articles of partnership defining their rights and obligations in relation to the operation of

the pasteurizing plant and the milk business which they propose to conduct. Dusinberre is to be charged with the management and supervision of the pasteurizing plant and the sale of the milk treated and bottled there, though he has had no experience in handling or selling pasteurized milk. The applicants expect to sell daily about forty quarts of the milk to two stores in Oaks Corners and about one hundred quarts in the hamlets of Seneca Castle, Flint, Stanley and Hall. The remainder of the milk the applicants expect to sell at the farm for nine cents a quart requiring in addition a deposit on each bottle. The price obtained by retailers in Geneva for milk delivered by them, with a smaller butter-fat content and sold in bottles with an inferior cap, is twelve cents. At least one of the three licensed dealers in Geneva sells milk to customers, who call at his plant, for ten cents per quart. The applicants have agreed that the milk produced by Dusinberre should be sold first and that Oaks should furnish the remainder of the milk sold by the applicants. Oaks stated that he is not dissatisfied with his present market but he believes that the proposed plan would result in more money for his milk.

These facts are not disputed and for the most part are embodied in findings made by the Commissioner. Testimony was also produced intended to show the probable demand by consumers for milk prepared and sold in the manner proposed by the applicants, the probable effect of such sales upon the market in which such sales would be made, and the probable receipts and expenses of the applicants under the proposed plan. The Commissioner formulated in writing his conclusion, drawn from the findings and the testimony presented, that " The applicants now have markets for their milk which, from the standpoint of prices received, are more satisfactory than the market of the average producer. The proposal which they now put forward would require the expenditure of considerable sums of money and the results, from the standpoint of the producers securing as good as their present returns, are doubtful at best. The City of Geneva has long been provided with

milk of a satisfactory quality at a price at least as low as the price charged in most other cities. This is possible because the number of distributors in the City of Geneva is not excessive, and because of that fact, economies are possible. If a license is granted to the applicants, it will tend to disturb the stability of the market, and bring about a decreased return to producers. In short, it will tend to a destructive competition in a market already adequately served, and it does not appear to be in the public interest. The application for a license should be denied."

The Agriculture and Markets Law provides that " No license shall be granted to a person not now engaged in business as a milk dealer * * * unless the commissioner is satisfied that the applicant is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business, that the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest." (Cons. Laws, ch. 69, § 258-c.)

The Appellate Division has held, in effect, that the Commissioner is not concerned with economic questions affecting the return which the producer would receive. " The statute," it is said, " does not make respondent the guardian of the farmer; whether they suceed or fail in their proposed venture will not affect him. The statute does not vest him with any authority to decide such an issue." (259 App. Div. 582, 584.) It is true that the statute is not intended for the protection of a dealer who may propose to engage in an ill-advised venture, nor does it give the Commissioner power to reject an application for a license, otherwise in the public interest, merely because he doubts whether the dealer's anticipations of profits will be realized. If an applicant " is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business " and if " the issuance of the license will not tend to a destructive competition in a market already adequately served," and if " the issuance of the license is in the public interest,"

the Commissioner may not reject an application for a license; but the Legislature has entrusted to the Commissioner the duty of determining whether an applicant has shown facts which entitle him to the grant of the license. Within that field he is charged with responsibility and must exercise discretion and judgment. He may be required to make findings of fact sufficient to enable a court to determine the question whether the rejection of an application for a license is reasonable and in accord with the rule or standard formulated by the Legislature; but where findings of the Commissioner give reasonable support to his conclusion and the findings in turn are supported by the evidence, a court should not substitute its judgment for the judgment of the Commissioner charged by the Legislature with responsibility.

The matters which may properly be considered by the Commissioner cannot be determined by any rigid general rule applicable in all cases. Substantial evidence sustains the findings of the Commissioner that " if a license is granted to the applicants, it will tend to disturb the stability of the market, and bring about a decreased return to producers. In short, it will tend to a destructive competition in a market already adequately served, and it does not appear to be in the public interest."

The order of the Appellate Division should be reversed and the determination of the Commissioner of Agriculture and Markets confirmed, without costs.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.