In the Matter of FRANCIS G. WILLIAMS, Petitioner, against C. CHESTER DU MOND, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, May 13, 1953.

*Adolph Matties* for petitioner.

*Robert G. Blabey* and *George G. Fiesinger* for respondent.

HALPERN, J.   The petitioner, a licensed milk dealer, applied to the Commissioner of Agriculture and Markets for an extension of his license to authorize service in the village of Chatham, Columbia County, New York.   Pursuant to section 258-c of the Agriculture and Markets Law, a hearing was held on notice to the petitioner and proof was taken.

At the hearing, no question was raised as to the qualifications or competence of the petitioner.   The principal question litigated was whether " the issuance of the license will tend to a destructive competition in a market already adequately served " and whether the issuance of the license was " in the public interest " (§ 258-c).   It appeared that the Village of Chatham, which had a population of about 2,300, was served by a single milk dealer who sold about 970 quarts per day.   His service was generally regarded as satisfactory, the complaints as to the quality of the milk or the adequacy of the service being trivial in character.   However, the petitioner maintained that in a community the size of Chatham there was room for at least two dealers.   The petitioner distributed milk in the town of Ghent adjacent to the village of Chatham and he testified that, with his existing equipment, he could adequately serve the village.   He expressed the

view that he would need about 250 quarts of business per day in the village to make the proposed extension worth while.

The hearing officer concluded that the existing service was adequate and that there was no need for additional service and that "Therefore, the granting of the requested extension would not seem to be in the public interest unless the Commissioner in his discretion should deem that on general principles the service of only a single distributor of milk in a market so large is not in the public interest." He further pointed out that, if the extension were granted, the petitioner would try to take away from the existing dealer about 25% of his business in the village. This the hearing officer concluded "might tend to a destructive competition in a market already adequately served".

Upon submission of the case to the commissioner, he found that "The granting of the extension would * * * tend to a destructive competition in a market which is already adequately served" but he also found, as an additional ground for denying the application, that the petitioner had been guilty of certain violations to which the hearing examiner had made no reference.

The charge of violations grew out of a misunderstanding by the commissioner as to the nature of the petitioner's operations and his relationship to Frank's Dairies, Inc., a corporation of which the petitioner owned all the stock. There were apparent conflicts between the answers given by the petitioner in his application and the answers which he gave in his oral testimony. The petitioner failed to distinguish clearly in his answers between the business which he conducted as an individual on the east side of the Hudson River and the business conducted on the west side of the river by the corporation. Because of this confusion, the commissioner concluded that the petitioner had violated various provisions of the statute and regulations (1) by purchasing milk from producers without filing a bond, (2) by operating a milk plant without having obtained a permit, (3) by making false and misleading statements in the application for the renewal of his license and (4) by failing to furnish statements or information required by the commissioner.

When the confusion between the petitioner's personal operations and the operations by his corporation is eliminated, it appears that there was no violation by the petitioner of any of the provisions of the statute or regulations. The corporation was the one which operated a milk plant and which purchased from producers and presumably it had a permit to operate a

milk plant and had filed a proper bond covering its purchases from producers. The charges of making false and misleading statements and of failing to furnish information required by the commissioner are likewise dissipated when the confusion between the petitioner and his corporation is cleared up.

The information which would have cleared up this confusion was available in the commissioner's own records. We cannot accept a conclusion that the petitioner was guilty of serious violations of law merely because such violations appear upon the face of a confused and confusing record, when it is apparent that a reference to the commissioner's own files would have demonstrated that there was, in fact, no violation.

We can only conclude that instead of trying to clear up the confusion, the commissioner seized upon the apparent violations as additional props to support his denial of the application.

With the alleged violations eliminated from the case, we come to the principal question of whether it was established by a preponderance of the evidence that the granting of the extension would tend to destructive competition and was therefore against the public interest. The petitioner argues that the mere fact that there was only one dealer precludes a finding that destructive competition would result from the licensing of a second dealer in the village. He argues that the Legislature did not contemplate a monopoly in any market and that the admission of a second dealer would destroy the existing monopoly and create healthful competition. The hearing examiner seems to have regarded this argument as having some merit and he accordingly passed it on to the commissioner but we believe the commissioner was right in rejecting it. There is nothing in the statute indicating the condemnation of monopolies of milk distribution in particular areas. When the Legislature places any business under regulation, with the requirement of a license for entry into the business, it necessarily contemplates the possibility of a monopoly in those areas in which a single license is granted. In many situations, under a regulatory statute, a monopoly may well be found to be in the public interest. Governmental regulation is then relied upon to provide the safeguards of the public interest which competition is expected to provide under the free enterprise system. Upon a review of all the factual elements, the commissioner has determined that the licensing of a second dealer in the village would tend to destructive competition. We cannot say upon this record that this conclusion is against the weight of the evidence.

We take cognizance of the fact that under the 1950 amendment to section 258-c (L. 1950, ch. 502), the scope of our review of the denial of a license by the commissioner has been greatly broadened. Under the statute as it read prior to the amendment, there was no specification of the standard of proof required for the commissioner's determination nor was there any specification of the related scope of judicial review. In that situation, the general standard governing the review of administrative determinations was applicable and the commissioner's determination on the facts was final, if it was supported by substantial evidence on the whole record (*Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488; *Matter of Weber* v. *Town of Cheektowaga,* 284 N. Y. 377; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256). The 1950 amendment required the commissioner to find '' by a preponderance of the evidence '' that certain adverse factors existed in order to justify a denial of a license. While the quoted phrase occurs only in section 258-c dealing with the action of the commissioner, we think that in the context here presented, it is equally applicable to the scope of review in cases in which the commissioner's determination is reviewed under section 258-d. The Legislature apparently decided, after a study of the administration of milk control, that the courts ought to participate to a greater extent in this field than they ordinarily do in the review of the action of administrative agencies. The amendment has the effect of conferring upon the Appellate Division the power to review the commissioner's determination upon the facts and to decide whether the determination is in accord with the weight of the evidence.

We have gone over the record in this case in the light of the broadened scope of our power. But even so, we cannot say that the commissioner's decision in this case was not supported by a preponderance of the evidence. However, we believe that, for two reasons, the commissioner should be required to rehear the issues: (1) There ought to be a determination by the commissioner in accordance with his judgment upon the evidence with respect to the issues of destructive competition and the public interest freed from the influence of the erroneous charges of violations by the petitioner. As we have indicated above, we believe that the commissioner will find the charges to be without substance upon re-examining them, with the distinction between the petitioner's personal business and corporate business firmly in mind. The commissioner ought to make a *de novo* determina-

tion of the basic issues after eliminating the erroneous charges of violation (cf. *Securities Comm'n* v. *Chenery Corp.,* 318 U. S. 80; 332 U. S. 194). (2) There appears to have been an error in the conduct of the proceedings which warrants the granting of a new hearing. The hearing officer refused to allow the petitioner's attorney to examine a report made by an investigator for the commission and used, at least in part, as the basis of his testimony. We believe that, under the circumstances, the petitioner's counsel should have been given an opportunity to examine the report and to cross-examine the witness with respect to it (cf. *Matter of Heaney* v. *McGoldrick,* 286 N. Y. 38).

It was suggested in the petitioner's brief and upon the oral argument that, after the denial of the petitioner's application, the commissioner granted a license to another dealer in the village of Chatham. This suggestion was not denied by the commissioner's counsel. If this occurred, we think that, in fairness to the petitioner, the commissioner should decide the issue of whether the extension of the petitioner's license would tend to destructive competition in the village, as of the date of the original hearing, without taking into account the effect of the presence of the additional dealer subsequently licensed.

The determination of the commissioner should be annulled and the matter remitted to the commissioner for further proceedings not inconsistent with this opinion.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Determination of the commissioner annulled, on the law and facts, and the matter remitted to the commissioner for further proceedings not inconsistent with this opinion, with $50 costs to the petitioner.