In the Matter of GEORGE ECHELMAN, Petitioner, against C. CHESTER DU MOND, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, January 27, 1954.

*George J. Sandler* and *Gustav P. Blaustein* for petitioner.

*George C. Fiesinger* and *Robert G. Blabey* for respondent.

HALPERN, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination by the respondent denying the petitioner's application for a license extension authorizing him to purchase milk from farmer-producers.

The petitioner held a license issued by the respondent authorizing him to sell milk at retail and wholesale in the city of Syracuse, New York. While the license on its face also contained a reference to the licensee's purchasing milk from producers and co-operatives, it did not authorize him to make such purchases without further approval by the respondent. Up to the time of the application with which we are here concerned, the sole operations of the petitioner under his license consisted of his purchasing bottled milk from a milk plant and reselling it to his customers upon his Syracuse milk route.

The petitioner was also a farmer-producer himself, being the owner and operator of two dairy farms in the vicinity of Syracuse. In July, 1952, the petitioner entered into a contract with the Netherland Company, Inc., the operator of a milk plant in Syracuse, to sell his raw milk to it and, in turn, to purchase from the Netherland Company bottled milk for sale upon his route. The quantity of milk produced by the petitioner upon his farms was not sufficient to provide full truck loads and the petitioner conceived the idea of purchasing additional milk from nearby farmers so as to have full truck loads to deliver to the Nether-

land Company. Under its contract, the Netherland Company agreed to purchase all the milk delivered by the petitioner; there was no reference in the contract to the fact that some of the milk which the petitioner proposed to deliver might be purchased by him from others nor was there any provision for the segregation of such milk from the milk produced upon the petitioner's own farms.

The petitioner applied in October, 1952, for an extension of his license as a milk dealer so as to authorize him to purchase raw milk from producers for resale to the Netherland Company. A hearing was held upon this application and thereafter the application was denied upon two grounds: (a) that the petitioner was not qualified to conduct the proposed business because he lacked the necessary equipment; (b) that the proposed extension of the petitioner's license would tend to a destructive competition and would not be in the public interest.

The substance of the respondent's holding was that the petitioner ought not to be allowed to engage in the type of operation which he proposed. The petitioner had no equipment to weigh or test the milk which he proposed to purchase, or to comply with the other requirements of the Agriculture and Markets Law. He proposed to leave all this to his subvendee, the Netherland Company, although, as noted above, there was nothing in the Netherland Company's contract which required it to make separate tests or to keep separate records with respect to the milk purchased by the petitioner from others and resold by him to the Netherland Company. Furthermore, the commissioner found that, even if the Netherland Company undertook to do this work, the arrangement would be an objectionable one because it would divide responsibility for compliance with the law between the petitioner and the Netherland Company in a manner which would greatly increase the difficulties of supervising and enforcing compliance. The commissioner differentiated the plan of operation submitted by the petitioner from the transportation of milk by milk haulers who act as agents of the producers in selling the milk to milk plants; they do not purchase from the producers and resell to the plant; the plant is the direct purchaser from the producer and is fully responsible for compliance with all provisions of law.

The commissioner found, in effect, that, in the light of the methods of operation generally prevailing in the milk industry and the problems with which the commissioner must deal in policing the industry, the petitioner's proposed plan of operation would not be in the public interest.

This conclusion was amply sustained by the evidence and, since it constituted an adequate ground for the commissioner's decision, it is unnecessary for us to pass upon the sufficiency of the other grounds assigned by the commissioner for his action.

In the briefs and upon the oral argument, a question was raised as to the scope of judicial review of the commissioner's determination in the light of the 1950 amendment to section 258-c of the Agriculture and Markets Law. In his answer in this proceeding, the commissioner took the position that his determination should be upheld, " whether the test is applied on the substantial evidence rule or on the preponderance of evidence rule, whichever is proper ", but in his brief he asserted that the substantial evidence test was controlling, citing *Matter of Dusinberre* v. *Noyes* (284 N. Y. 304), which was decided before the adoption of the 1950 amendment.

In the *Matter of Williams* v. *Du Mond* (282 App. Div. 76) we discussed the effect upon the scope of judicial review of the amendment to section 258-c by chapter 502 of the Laws of 1950. (See, also, *Matter of Dairymen's League Co-Op. Assn.* v. *Du Mond,* 282 App. Div. 69, appeal on constitutional grounds dismissed 306 N. Y. 595.) We held in the *Williams* case that the scope of judicial review had been broadened by the amendment and that, under it, we were authorized to review the commissioner's determination upon the facts and to decide whether the determination was in accordance with the weight of the evidence. In view of the reopening of the question upon this appeal, an elaboration of the reasoning which led to that conclusion may be appropriate.

Prior to 1950, there had been considerable criticism of the denial of dealer's licenses by the Division of Milk Control and of the limited scope of judicial review of such denials. A bill was introduced, which ultimately became chapter 502 of the Laws of 1950, to meet this criticism. While the bill was not as explicit as it might have been, it was generally understood that the bill shifted the burden of proof to the commissioner and that under the bill, instead of the applicant's being required to prove that he was entitled to a license, the commissioner would be required to prove by a preponderance of the evidence that a denial of the license was justified, in any case in which he proposed to deny the license. The Commissioner of Agriculture and Markets so interpreted the bill in his memorandum to the Governor which was, in turn, quoted by the Governor in his memorandum accompanying the approval of the bill (1950 N. Y. State Legis. Annual, p. 353; see, also, note to section 258-c

in the supplement to McKinney's Agriculture and Markets Law). The commissioner's memorandum read in part as follows:

"This bill places the burden of proof on the Department *to show* that the application of a prospective milk dealer should be denied if it is so determined by the Commissioner. In all of our hearings on milk dealers' applications we are prepared *to prove* by a preponderance of evidence that such a license is not in the public interest.

"It will change the procedure of our hearing from a simple determination of the facts surrounding the application to an active prosecution of a hearing *to substantiate* the commissioner's decision. This may remove some of the criticism which at present exists where applicants feel that the Department goes beyond the mere development of the facts involved. I know of no reason why the Department cannot *sustain its case* as well under this proposed law as it can under the existing law." (Italics ours.)

The words which we have italicized in this memorandum indicate that the commissioner understood that the bill would require him, in every case in which he denied a license, to justify his decision by a preponderance of the evidence. This necessarily meant that the commissioner would have to be prepared to satisfy the court, if judicial review were invoked, that he had established his case by a preponderance of the evidence. This is very different from the general principle governing quasi-judicial action, sometimes expressly stated in statutory provisions, that an administrative officer ought to decide questions of fact arising in cases before him in accordance with the preponderance of the reliable evidence (Benjamin on Administrative Adjudication in the State of New York, p. 222; cf. Federal Administrative Procedure Act, § 7, subd. [c], U. S. Code, tit. 5, § 1006, subd. [c]). In the latter case, the rule is one laid down solely for the guidance of the administrative officer and it does not have any effect upon the scope of judicial review. In the Agriculture and Markets Law section, however, the rule is not laid down merely as a rule of decision for the commissioner. The rule places the burden of proof upon the commissioner and requires him to establish to the satisfaction of the reviewing court that his denial of the license was supported by the preponderance of the evidence.

We have accordingly reviewed the record in this case in the light of the broadened scope of judicial review authorized by section 258-c. Upon the facts, however, we have come to the

conclusion that the commissioner's decision is supported by the weight of the evidence and we accordingly sustain his decision. The determination should be confirmed, with $50 costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Determination confirmed, with $50 costs.