In the Matter of WESTERN NEW YORK MILK DEALERS, INC., et al., Petitioners, v DONALD G. BUTCHER, as Commissioner of Agriculture and Markets of the State of New York, Respondent, and WESTERN NEW YORK MILK PRODUCERS COOPERATIVE BARGAINING AGENCY et al., Intervenors.

Third Department, February 15, 1990

### APPEARANCES OF COUNSEL

*John Benjamin Carroll, P. C. (Woodruff L. Carroll* of counsel), for petitioners.

*Joan A. Kehoe (Michael McCormick* and *Larry A. Swartz* of counsel), for respondent.

*Alagia, Day, Marshall, Mintmire & Chauvin (John J. Mc-Laughlin* of counsel), and *Culley, Marks, Corbett, Tanenbaum, Reifsteck & Potter (Burton D. Tanenbaum* of counsel), for intervenors.

## OPINION OF THE COURT

HARVEY, J.

In October 1987, intervenor Western New York Milk Producers Cooperative Bargaining Agency submitted a request to the Department of Agriculture and Markets seeking to make certain amendments to the then existing "Western New York Milk Marketing Area" order (1 NYCRR part 21). The proposal sought to, *inter alia,* expand the boundaries covered by 1 NYCRR part 21. Respondent ultimately issued a final decision expanding the original milk marketing area to include all of Erie, Monroe, Niagara, Orleans, Genesee, Livingston, Ontario, Seneca, Wayne and Wyoming Counties, and certain towns within Allegany, Cattaraugus, Cayuga, Steuben and Yates Counties. Prior to any final decision by respondent, however, extensive hearings relating to the proposed amendments were held pursuant to Agriculture and Markets Law § 258-m. Representatives of interested parties were present at the hearings, including those of petitioners herein. Participants submitted written comments and arguments following the hearings. Following respondent's initial recommended decision, individuals were invited to file written exceptions. Once respondent's final decision was issued, it could not be effective without an affirmative vote of two thirds of the affected dairy farmers *(see,* Agriculture and Markets Law § 258-m). The required percentage was received and respondent's certified final decision containing the amendments was filed with the Secretary of State and became effective on June 1, 1988 *(see,* 1 NYCRR 21.3).

■ Thereafter, petitioners, who were all located in areas that were previously not subject to coverage under 1 NYCRR part 21, commenced this CPLR article 78 proceeding seeking review of respondent's action in expanding the market areas covered in the order. Following permission by Supreme Court to allow certain interested parties to intervene in the proceeding, the court issued an order transferring the matter to this court pursuant to CPLR 7804 (g).[1]

■ Petitioners challenge that part of respondent's decision which expanded milk price regulation of raw milk sold by

1. [1] We note that respondent incorrectly contends that this proceeding was improperly transferred by Supreme Court. It has previously been held that the promulgation of milk marketing orders by a Commissioner of Agriculture and Markets (based upon the testimony adduced at a hearing with notice as required by the Agriculture and Markets Law) are "judicial" in nature. Therefore, the correct standard of review is whether substantial

producers to dealers to include certain previously unregulated dealers. The grounds for this challenge are that respondent's findings were legally insufficient, the findings were not supported by substantial evidence and that petitioners were denied their due process rights in the hearings before respondent. After examining each of these arguments in turn, it is our view that respondent's decision was proper, within the spirit and purpose of the Agriculture and Markets Law, and supported by the evidence.

Turning to petitioners' first argument, we find nothing improper in the findings made by respondent in his decision. It is settled law that respondent has the authority under the Agriculture and Markets Law to change or expand the boundaries of an existing marketing area (see, *Matter of Beers v Wickham,* 25 AD2d 165, 166), provided such change is effected in accordance with Agriculture and Markets Law § 258-m and respondent finds, from testimony and evidence produced at a hearing with notice, that "there has been or is a disruption of orderly marketing of milk in any marketing area by reason of surpluses or by reason of unfair, unjust or destructive trade practices" (Agriculture and Markets Law § 258-k).[2] It must be remembered at all times that the primary purpose of milk marketing orders and regulation in general is to assure an adequate supply of pure and wholesome milk for the consuming public (see, *Matter of Friendship Dairies v Du Mond,* 284 App Div 147, 153) which can be accomplished through eliminating disorderly marketing conditions (see, Agriculture and Markets Law § 258-k).

In the case at bar, respondent duly found, based on the evidence adduced at the hearing and in accordance with statute, that expansion of the existing order area was neces-

evidence exists to support the determination (see, *Matter of New York State Guernsey Breeders' Co-Op. v Noyes,* 284 NY 197, 204; *Matter of New York State Guernsey Breeders' Co-Op. v Du Mond,* 279 App Div 683, *affd* 304 NY 906; *cf., Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 407).

2. We note that Agriculture and Markets Law § 258-k was amended by the Legislature by Laws of 1987 (ch 540) to delete the requirement that, prior to taking action to fix prices, respondent find that milk prices have been forced below the cost of production (see, *Matter of Western N. Y. Milk Dealers v Walkley,* 44 AD2d 741). The purpose for the elimination of this requirement was to "bring the statute up to date and better the opportunity for revisions in the boundaries of [milk marketing orders] which take into account changes in population and other relevant conditions" (Department of Agriculture and Markets mem, Governor's Bill Jacket, L 1987, ch 540).

sary to promote the efficient marketing of fluid milk. Among other things, respondent found that: (1) disorderly marketing of milk among dairy farmers existed in the affected areas, (2) there were disorderly marketing conditions between regulated and unregulated marketers not previously covered by the order, and (3) such disorderly marketing conditions were the result of surpluses and of unfair and unjust trade practices.[3]

■ Next, we find that despite petitioners' contention otherwise, substantial evidence was presented to support these conclusions. Consistent with respondent's findings, the record established that the original marketing area and the area added to the existing milk marketing order were characterized by intermarket competition in distribution. This competition was increased, in part, due to population shifts in the existing and proposed marketing areas as well as by the construction or renovation of highways linking areas within the existing order to those in the proposed expanded order. Facts were submitted demonstrating that the existing areas covered under 1 NYCRR former 21.3 and the proposed areas together actually constituted one market for the sale and distribution of milk. Testimony was taken that dairy farmers who supplied regulated marketers and dairy farmers who supplied unregulated marketers were interspersed throughout the entire area and that the unregulated marketers did not account to a market administrator or pay into the pool with respect to what were known as their "Class I" sales in the proposed areas, which had the effect of lowering the uniform price paid to all dairy farmers in the entire area.[4]

Among other things, the record establishes that while regulated and unregulated marketers competed against each other for fluid milk sales in the areas sought to be added, unregulated marketers paid approximately the uniform price for such milk while regulated marketers were required to pay the

3. [2] While petitioners contend that a prerequisite to any expansion of an order is a finding by respondent that there are disruptive marketing conditions in the *unregulated* area, we find no basis for such a requirement. As found by respondent, certain unregulated or partially regulated dealers and producers were actually enjoying an economic advantage over their regulated counterparts. Therefore, looking for disruptive conditions in that corner without looking to the effect the unregulated area is having on the regulated area would be an exercise in futility and is not required by statute.

4. For a brief explanation of the difference between Class I and Class II milk, see *Matter of Western N. Y. Milk Producers Coop. Bargaining Agency v Butcher* (154 AD2d 49 [decided herewith]).

higher, Class I price resulting in unfair market conditions. Further, unregulated marketers obtained a portion of their fluid milk needs from the reserve supply of fluid milk produced for the areas covered by 1 NYCRR former 21.3 by dairy farmers selling to regulated marketers. Taken together, this evidence sufficiently supported respondent's determination that expansion was necessary to deter disorderly market conditions.

■ Petitioners' due process argument centers around the contention that respondent prejudged the expansion issue and was therefore biased because of a statement allegedly made by respondent prior to the hearing. Our review of the record reveals no support for this allegation of partiality and that the hearing was conducted in accordance with the dictates of due process. Petitioners were represented by counsel at the hearing, an opportunity to cross-examine witnesses was given, respondent's conclusions were supported by substantial evidence on the record and a rational basis existed for the determination. Accordingly, respondent's determination must be confirmed.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, without costs.