In the Matter of WESTERN NEW YORK MILK PRODUCERS COOP-
ERATIVE BARGAINING AGENCY et al., Petitioners, v DONALD
G. BUTCHER, as Commissioner of the State of New York
Department of Agriculture and Markets, Respondent, and
SORRENTO CHEESE COMPANY, INC., et al., Intervenors.

Third Department, February 15, 1990

### APPEARANCES OF COUNSEL

*Alagia, Day, Marshall, Mintmire & Chauvin (John J. Mc-Laughlin* of counsel), and *Culley, Marks, Corbett, Tanenbaum, Reifsteck & Potter (Burton D. Tanenbaum* of counsel), for petitioners.

*Joan A. Kehoe (Michael McCormick* and *Larry A. Swartz* of counsel), for respondent.

*Moot & Sprague (Gary F. Kotaska* of counsel), for intervenors.

### OPINION OF THE COURT

HARVEY, J.

In October 1987, petitioner Western New York Milk Produc-

ers Cooperative Bargaining Agency submitted a request to the Department of Agriculture and Markets seeking to make certain amendments to the then existing "Western New York Milk Marketing Area" order (1 NYCRR part 21).[1] As described in *Matter of Western N. Y. Milk Dealers v Butcher* (154 AD2d 43 [decided herewith]), statutorily required hearings with notice were held in conjunction with this request which ultimately resulted in the promulgation of certain amendments to the previously existing order. At issue in this proceeding is one provision of the amendments permitting milk marketers to divert an unlimited amount of milk receipts during March through August, and up to 70% thereof during the remaining months each year. However, a marketer who already had permission to divert milk as of April 15, 1988 under 1 NYCRR former 21.16 could divert the greater of such percentage or eight million pounds of milk per month.

Disturbed by that part of the provision allowing previously granted diversions to remain, certain of the petitioners herein specifically objected to that provision while, nonetheless, voting for respondent's amendments on the whole. According to petitioners, the diversion designation impermissibly favored the intervenors in this proceeding. It appears that in January 1988, respondent had granted the application of intervenor J. Beres & Sons Dairy, Inc. (hereinafter Beres) for permission to divert milk from its plant in the Town of Lackawanna, Erie County, to the cheese plant of intervenor Sorrento Cheese Company, Inc. (hereinafter Sorrento), Beres' parent company.

In June 1988, petitioners initiated this CPLR article 78 proceeding to review respondent's two actions in granting the

---

1. Briefly, the primary purpose of these orders and the milk marketing statutes is "to assure an adequate supply of milk for the consuming public" *(Matter of Friendship Dairies v Du Mond,* 284 App Div 147, 153) by guaranteeing a minimum (or uniform) price to milk producers, thus ensuring the availability of a ready reserve of fluid milk to guarantee this minimum price. A milk marketing order provides for payment by milk marketers of minimum prices to producers according to milk usage and through milk pooling of the differing values of the various uses of milk to achieve an average (blend) price for producers. Class I milk is used for drinking and is sold at the highest price. Class II milk is used for manufacturing (e.g., cheese and ice cream) and brings a lower price. The effect of pooling is that all eligible farmers receive the equalized price. Diversion of milk is the delivery of milk purchased directly from a producer by a marketer to a plant other than the marketer's pool plant. Although diverted milk is not formally utilized by the marketer, that milk is permitted to be pooled under the order and is treated as pool milk in determining the marketer's obligation under the order.

diversion designation to Beres and including the diversion designation in 1 NYCRR 21.17 (b). Supreme Court thereafter issued an order transferring the proceeding to this court pursuant to CPLR 7804 (g).[2]

■ Addressing the principal issues raised by the parties, we first find that respondent did not abuse his discretion by granting a diversion designation to Beres in January 1988 pursuant to 1 NYCRR former 21.16 (a).[3] 1 NYCRR former 21.16 (a) left the designation of diversion plants to the broad discretion of respondent when certain conditions were met *(see,* 1 NYCRR former 21.16 [b]). Significantly, petitioners do not allege in the case at bar that Beres failed to meet these conditions; instead, they argue only that respondent was obligated to solicit and consider their opinions prior to granting the diversion designation. However, nowhere in the relevant statutory or regulatory provisions is such a requirement presented or is a hearing mandated for such purpose. Accordingly, since petitioners have failed to argue or show that respondent's determination granting the designation lacked a rational basis, there is no reason for us to annul that determination.

■ We turn now to respondent's action in amending the order to include a provision excluding previously granted diversion designations from having to comply with the pooling restrictions for diverted milk contained in 1 NYCRR 21.17 (b). In our view, substantial evidence supports respondent's inclusion of the alleged "grandfather" provision in the regulation. On this record, it cannot be said that it was irrational for respondent to conclude that recognizing previously granted diversions in the amended regulation would not adversely affect the availability of fluid milk for consumers. Evidence was introduced at the hearing establishing, *inter alia,* that there was a large reserve supply of milk available to "Class I" marketers for sale in fluid form to the affected areas and there was a shortage of milk available for use in dairy products of

---

2. [1] Respondent incorrectly contends that the proceeding was improperly transferred since respondent's action in amending the milk marketing order raised a substantial evidence question *(see, Matter of Western N. Y. Milk Dealers v Butcher,* 154 AD2d 43, 45-46, n 1). When an issue of substantial evidence is raised, Supreme Court "shall make an order directing that the proceeding be transferred" and the Appellate Division shall "dispose of all issues" (CPLR 7804 [g]).

3. At the time that Beres was granted the diversion, respondent had not yet issued the final decision on the order amendments. Effective June 1, 1988, 1 NYCRR former 21.16 (a) was renumbered 1 NYCRR 21.17 (a).

other types. Additionally, the milk used for fluid consumption in the affected areas was decreasing.

We find no support for petitioners' apparent contention that the diversion designation benefits the intervenors at the expense of the public. The public would not be adversely affected by the order since, due to the surplus of milk, the amount diverted to Sorrento would not impact on the availability of fluid milk for consumers. At oral argument, the principal contention of petitioners was that the diversion grant to Sorrento permitted its manufacturing of Class II milk to be subsidized by the producers and dealers of Class I milk. The fact is, however, that the diversion designation to Sorrento has no effect upon the uniform price of milk paid to producers since the surplus Class II milk was always sold to manufacturers of one sort or another and the farmers were always paid the same price. The amendment to the order merely continues the same method of establishing the price as was previously used. In the event that the surplus disappears and the diversion to Sorrento creates or threatens to create a disruption in orderly marketing conditions, the diversion can be rescinded (21 NYCRR 21.17 [a]). While the intervenors are benefited by the amendment, such benefit is clearly incidental to respondent's finding that the diversion designation was necessary to avoid adversely affecting established patterns of marketing.

Moreover, Sorrento, an extremely large purchaser of milk in the area, was experiencing difficulty in obtaining sufficient milk for its products despite the surplus of milk for fluid consumption. One of respondent's duties is to assure the viability of the dairy industry to serve the interests of the consuming public (see, Agriculture and Markets Law § 258-k). Accordingly, he concluded that, without Sorrento's continued presence in the market as a major purchaser of milk, the affected dairy farmers would not only have one less purchaser for their milk, but it would be far less likely that dairy farmers would be paid a price in excess of the minimum uniform price established by the milk marketing order. Since respondent's decision was consistent with the purpose and intent of the Agriculture and Markets Law and was amply supported by the record, we decline to disturb it.

Finally, we note that the remaining contentions of the parties, including those raised by the intervenors in their brief, have been examined and have been found to be lacking in merit.

KANE, J. (dissenting). The entire regulatory scheme encompassing the dairy industry is designed "to protect the dairy industry and insure an adequate supply of milk for the inhabitants of this state" (Agriculture and Markets Law § 258-k; *see, Matter of Friendship Dairies v Du Mond,* 284 App Div 147, 155). The diversion granted in this case by respondent provides Sorrento direct access to eight million pounds of milk per month (originally 16 million pounds) for manufacturing purposes (i.e., cheese, ice cream, yogurt, etc.) without Beres assuming the same obligation to the fluid market imposed upon other dealers, who may apply for and obtain designation as a "diversion plant" and who, otherwise, would be limited to a diversion of 70% (1 NYCRR 21.17 [b]). Under this order, individual producers still receive the "blend" price for their product, making membership in the cooperative organizations of little benefit since they may negotiate directly with the manufacturer. This huge addition of Class II milk to the pool can only reduce the price of fluid milk, depress the blend price and impair the supply of fluid milk available to the general public, in direct contravention of the provisions of the statute. Moreover, other producers will be encouraged to leave their cooperative, thus reducing its profitability and impacting unfavorably upon the orderly marketing of fluid milk, again in violation of the policy set forth in Agriculture and Markets Law § 258-k. It is no answer to say that the milk diverted to Sorrento would ultimately be shipped to them in any event. As indicated, other dealers have a commitment to the fluid market. The special privilege granted to Beres reduces the availability of Class I milk, requiring other sources of supply to meet the needs of the fluid market provided by producers who are not cooperative members.

Finally, the thrust of respondent's grant of the diversion was to assist Sorrento, rather than the fluid market, as required by statute. It was granted after the hearing and without evidence presented for or against the proposition, and in contravention of established practices. Accordingly, the grant of the diversion was not only arbitrary and capricious, but without substantial evidence in the record to support it.

I would therefore grant the petition and annul respondent's determination.

MAHONEY, P. J., CASEY and WEISS, JJ., concur with HARVEY, J.; KANE, J., dissents and votes to annul in an opinion.

Determination confirmed, and petition dismissed, without costs.