AMERICAN CONSUMER INDUSTRIES, INC., Appellant, *v.* CITY OF NEW YORK et al., Respondents.

First Department, June 29, 1967.

*Stephen R. Steinberg* of counsel (*Frederick R. Adler* and *Carl E. Kaplan* with him on the brief; *Reavis & McGrath*, attorneys), for appellant.

*Stanley Buchsbaum* of counsel (*Richard Kandell* and *Avram Weisberger* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for City of New York and another, respondents.

*George B. Kenner* of counsel (*Yellin, Kenner & Levy*, attorneys), for Rubel Corporation, respondent.

STEVENS, J. P. Plaintiff instituted an action for a judgment that the defendants had no power to enter into an exclusive

franchise agreement for the sale and delivery of ice to tenants in the Hunts Point Market and for an injunction restraining defendants from taking any steps to deny plaintiff access to such market for the purpose of selling and delivering ice.

Plaintiff's motion for a temporary injunction was denied and plaintiff appealed therefrom. This court granted a preliminary injunction pending appeal from such order and later granted a temporary injunction pending a trial of the issues. The action was tried, decision rendered June 1, 1967 in favor of defendants, and judgment entered thereafter on June 5, 1967. It is from such judgment dismissing the complaint that this appeal is taken.

Plaintiff, a New Jersey corporation duly qualified to do business in the State of New York, is engaged, through one of its divisions, Knickerbocker Ice Company, in the business of manufacturing ice for sale and delivery to customers in the New York City area. In 1964 it purchased a route which serviced the Washington Market. Washington Market was closed about March 3, 1967, and many if not most of the tenants moved to Hunts Point Market, which opened about March 6, 1967. Included in the group so moving were many of plaintiff's regular customers. Plaintiff continued to serve such customers until March 9, 1967, when its trucks were denied admittance to the market area. Such denial was predicated upon the fact that on or about December 15, 1965, the defendant Commissioner of Markets entered into an agreement with Rubel Corporation (Rubel) whereby Rubel obtained an exclusive franchise to sell and deliver ice to the occupants of the market.

Plaintiff (the appellant herein) contends:

(1) The exclusive franchise violates the Constitutions of the United States (14th Amdt., § 1, which prohibits the abridgment of certain rights, etc.) and of the State of New York (art. III, § 17, granting exclusive privilege or franchise to a private corporation prohibited); that a municipality acting in a proprietary capacity, cannot under the guise of exercising its police power create a monopoly.

(2) The exclusive franchise violates the Donnelly and the Sherman Acts by creating a monopoly.

(3) The exclusive franchise is invalid since it was not adopted in accordance with the City Charter and Administrative Code of the City of New York. Moreover, the Commissioner of Markets is without power to award such exclusive franchise. Plaintiff further contends the decision after trial is unsupported by the evidence and is contrary to law.

Defendant, the City of New York, asserts the franchise does not violate a constitutional provision, is not prohibited by the Donnelly Act (General Business Law, § 340) or the Sherman Anti-Trust Act (U. S. Code, tit. 15, § 1 *et seq.*), is in the public interest and a valid exercise of the police power, and since the city would have had the right to enter into the agreement in issue the Commissioner of Markets, who has control over Hunts Point Market, may enter such agreement.

It may fairly be stated if the granting of the exclusive franchise was a proper exercise of the police power of the City of New York it is not subject to successful attack. Examination of the record does not support the contention of the city in this respect, and we conclude that the franchise should not be allowed to stand.

By letter dated September 9, 1965 the Commissioner of Markets (Commissioner), in response to an earlier inquiry, informed plaintiff bids were being accepted for an exclusive franchise for the ice concession based on an upset price of $11,300, all bids to be submitted by September 20, 1965. As of August 19, 1966 plaintiff had not received notice of any formal bid opening nor an announcement of an award. It therefore addressed an inquiry to the Commissioner and was informed that Rubel had been awarded the contract, which bore date of December 13, 1965.

The declaration of the policy of New York State with respect to the agricultural industry is set forth in section 3 of the Agriculture and Markets Law. Section 261 of that law defines the jurisdiction of the Commissioner. Neither section empowers the Commissioner to grant such an exclusive franchise for ice as was granted here. The city asserts that in deciding to build this market it was decided to have it operate on a self-sustaining basis and the consideration received from Rubel will help achieve that objective. In the view of most of us the mere economic return does not justify the franchise in the creation of a monopoly. The restraint of the right of free competition and interference with plaintiff's business or contractual arrangements with its customers on the stated basis is insufficient justification, if indeed it does not violate section 340 of the General Business Law, since the city is here acting in a proprietary capacity (see, also, 18 McQuillin, Municipal Corporations [3d ed.], § 53.30a, *re:* corporate as distinguished from governmental functions).

The city asserts also that there is reasonable justification in the case of regulating a single ice dealer so as to assure proper and adequate delivery of ice, and avoid congestion and confusion in the market. The difficulty with that position is there was no

hearing with respect to such issues and the record is barren of any evidence tending to support such a contention. Moreover, up to the time of the trial no conditions, restrictions or regulations with respect to the franchise had been promulgated by the Commissioner though the franchise vested such power in the Commissioner. Washington Market apparently operated efficiently, free of such interference as results from the exclusive franchise here granted.

There was no publication of any notice that a franchise for the delivery and sale of ice would be awarded, nor was there public notice of such award.

Additionally, no hearings were held with regard to the franchise, nor was any investigation made with respect to the successful bidder or of its ability to perform the contract. The trial record and the exhibits lead irresistibly to the conclusion that the letting of the franchise was solely a revenue-producing device.

Though the result of the franchise is to create a monopoly, the city asserts, and we agree, that a monopoly or agreement in restraint of trade may, upon occasion, be warranted in the exercise of the police power. It asserts further that this is an instance where there was such a valid exercise of the police power. This assertion requires closer examination. Admittedly the police power does not lend itself to easy definition nor is it subject to readily defined limitation.

Generally, the privilege or franchise granted in the exercise of the police power must not be in conflict with any general statute or with the Constitution, and it should be reasonable, necessary and appropriate for the protection of the public health and comfort. It must not violate fundamental law, interfere with the enjoyment of fundamental rights beyond the necessities of the case, and must bear a real, substantial relation to the object to be achieved (*Reduction Co.* v. *Sanitary Works*, 199 U. S. 306, 318). Police power is a power of government inherent in the sovereignty and is to be exercised in the public interest for the public good (see *Nebbia* v. *New York*, 291 U. S. 502). Property rights and contract rights are not absolute but must yield when the police power is exercised for the public good (*Nebbia* v. *New York, supra*). For it has been held " neither the ' contract ' clause nor the ' due process ' clause has the effect of overriding the power of the State [and a power exercised by virtue of a regulation or ordinance enacted pursuant to power delegated by the Legislature may be considered State power] to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general

welfare of the community ''. (*Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548, 558.) Such power can neither be abdicated nor bargained away and contract rights and property rights are subject to its fair exercise. However, the power may not be exerted arbitrarily or unreasonably (*Nashville, Chattanooga & St. Louis Ry.* v. *Walters,* 294 U. S. 405). Whether or not it is so exercised must be determined from a consideration of the relevant facts.

The relevant facts have been set forth already. Land was condemned or purchased with public funds and a public market established occupied entirely, or in the main, by private tenants engaged in the operation of private businesses for profit. Each tenant had a right to make such contracts with its suppliers as it deemed most profitable and in its best interests. Of course the city has a right to regulate the operations, but the right of regulation does not give the right to create a monopoly so as to force the tenants to deal only with one supplier of ice (see *Thousand Is. Park Assn.* v. *Tucker,* 173 N. Y. 203). If disorder, confusion and conditions hazardous to the health and welfare of the public resulted from multiple suppliers of ice a vastly different question would be posed. But nothing in the record leads to that conclusion or supports such an argument. In fact, for three days plaintiff supplied ice to its customers without any untoward incident.

Nor can the present situation be equated, as the city urges, with the right of a property owner to select his tenants or to make a covenant in a lease to a store owner that he will not rent any other store in a building or group of buildings to anyone who sells similar goods. The situation obviously is vastly different.

Nothing appears in the record to support the contention that this is a reasonable exercise of the police power. The franchise for an ice monopoly cannot be held designed to promote public safety or public health for no hazard has been shown to exist, or the reasonable likelihood that such a hazard will develop. Public convenience and the general prosperity cannot be said to be affected by reason of the nature of the franchise and the return therefrom. Nor has a public necessity for this exclusive privilege been shown, and no aspect of the public morals is involved. In fact none of the criteria associated with the exercise of the police power are present except, perhaps, in the most nebulous fashion. The record and the exhibits label the franchise as designed solely for revenue purposes. Such an objective does not warrant and will not support the exclusive privilege

granted. Plaintiff, as a party adversely affected, has status to attack the franchise.

The dissent seeks to justify the city's action on the ground that it is an incident of the conceded power to operate a market. While a regulation violative of law in other respects may, in certain instances, be sustained as a reasonable and necessary provision to effectuate a proper purpose, that is not the situation as presented by the proof. At the expense of iteration, the sole claim of respondent in that regard is that the purpose of maintaining a market would be furthered by the granting of this license for the single reason that this would provide revenue. And the proof on the trial goes no further. In no other respect has it been shown that the purpose of the market is furthered or intended to be furthered by this regulation. Increasing its revenue does not warrant the city to establish an otherwise illegal monopoly.

The judgment appealed from should be reversed on the law, with costs and disbursements to plaintiff-appellant, and the exclusive franchise granted declared void.

EAGER, J. (dissenting). I dissent from the determination declaring the invalidity of the franchise or agreement with defendant Rubel Corporation for the exclusive right to deliver ice to the tenants of and railroads in the Hunts Point Market. The validity and lawfulness of the establishment and operation of said market by the respondent Commissioner of Markets of the City of New York is conceded. Therefore, the question here is not whether the said franchise or agreement itself was an act authorized by the police power. Rather, the question is whether the franchise or agreement is valid and authorized as an incident to the establishment and operation of the market. On this basis, the plaintiff has failed to sustain the burden of proving the alleged invalidity of the acts of the Commissioner. I would hold that the franchise or agreement and the acts and proceedings of the Commissioner with reference thereto were fully within his powers and that the same had such reasonable relationship to the establishment and operation of the market as to be sustainable. Declaratory judgment should be granted to the defendants.

STEUER, CAPOZZOLI and McGIVERN, JJ., concur with STEVENS, J. P.; EAGER, J., dissents in opinion.

Judgment reversed on the law, with $50 costs and disbursements to appellant, and judgment granted in favor of the plaintiff declaring the exclusive franchise void, and the Clerk is directed to enter judgment accordingly.