DOMINICK LIVOTI et al., Respondents, v A. ROGER ELSTON, Also Known as ALFRED EDELSTEIN, Appellant.

Second Department, June 14, 1976

*Ronald C. Davies* for appellant.

*Hahn, Gottlieb & Factor (David Farber* of counsel), for respondents.

SHAPIRO, J. On this appeal the defendant seeks reversal of

that part of a judgment of the Supreme Court, Suffolk County, entered September 17, 1975, which, in effect, determined that he was liable for maliciously inducing the breach of a contract for the sale of real property and which ordered him to convey the property in question to the plaintiffs, or, if that could not be done, awarded a money judgment to the plaintiffs. We reverse the judgment insofar as it is appealed from and dismiss the complaint.

On April 6, 1974 the plaintiffs entered into negotiations with one Robert Rorech for the purchase of a parcel of real estate owned by him. During the course of the negotiations Mr. Rorech was represented by the defendant, an attorney who had worked for him in the past. Although the plaintiffs and Mr. Rorech reached an oral agreement for the sale of the property, no contract was ever signed and no binder was given. Thereafter the plaintiffs ordered and obtained a title report and April 17 was set as the closing date. The signing of a formal contract was to take place at the time of the closing. On April 16 the defendant prepared a bond and purchase-money mortgage and mailed those documents to the plaintiffs' attorney.

On April 17 Mr. Rorech sought to change the terms of the agreement by converting the purchase into an all cash deal. The plaintiffs agreed to this alteration of the agreement and the closing was thereupon moved back to the evening of April 18. The closing never took place because on the morning of April 18 the defendant and Mr. Rorech met to discuss the closing and, at that meeting, Mr. Rorech sold the property to the defendant for a price slightly higher than the price which he had agreed upon with the plaintiffs.

The plaintiffs then brought this action against Mr. Rorech for breach of contract and against defendant for inducing the breach. As a remedy, the plaintiffs sought specific performance of the oral agreement, or, in the alternative, damages. The Special Term dismissed the action as to Mr. Rorech because the agreement was not in writing as required by section 5-703 of the General Obligations Law. The defendant, however, was found liable for inducing the breach of the agreement. He was ordered to convey the property to plaintiffs, or, if this was not possible, to pay damages. That finding of liability is the subject of this appeal. The question thus presented is whether a third party may be found liable for inducing the breach of a contract for the sale of real property,

otherwise unenforceable because it is not in writing, by offering the seller a higher price, when it is clear that the terms of the contract would have been fulfilled absent the interference of the third party.

The essential elements to be established in an action for inducing the breach of a contract are: (1) that a valid contract was entered into between the plaintiff and another; (2) defendant's knowledge of such contract; (3) defendant's wrongful, intentional procuring of the breach of that contract; and (4) damages *(Israel v Wood Dolson Co.,* 1 NY2d 116, 120; *Lamb v Cheney & Son,* 227 NY 418).

The oral contract between the plaintiffs and Mr. Rorech was not void since it is "the settled New York rule that our Statute of Frauds * * * makes oral agreements not void but unenforcible" (see *Rubin v Irving Trust Co.,* 305 NY 288, 307). Absent interference by the defendant here, there is ample evidence that the sale would have been consummated. Ten days of negotiations had passed, a title search had been completed, a bond and mortgage had been prepared, a price had been agreed upon and a date for the closing and the signing of a written contract had been set. Where there is proof establishing that the parties to a contract, unenforceable because it is not in writing, would have abided by the terms of the contract, it has been held that the *fraudulent* inducement of the breach of such a contract results in liability *(Rice v Manley,* 66 NY 82; *Warner Bros. Pictures v Simon,* 21 AD2d 863, affd 15 NY2d 836; *Cohen v Brunswick Record Corp.,* 31 Misc 2d 525).

The *Rice* case *(supra),* decided 100 years ago, gave the following pertinent example of when there may be a recovery for inducing a breach of contract (66 NY, at p 85): "Suppose A made a parol contract with B for the purchase of land, and B is ready and willing to convey, but is prevented from so doing by the fraudulent representations of C as to A, by which B is deceived and induced to convey to C; in such case, although A could not have compelled B to give him the conveyance, it would be a reproach to the law to hold that C would not be liable to A for the damage caused by the fraud." Thus, even when a contract is voidable, one may not procure its breach by engaging in fraud or misrepresentation. Here, however, although the defendant induced Mr. Rorech to sell the land to him by offering him more money, he engaged in no misrepresentation or fraud in inducing his own client, Mr. Rorech, to

sell the real estate to him. He owed no duty to the plaintiffs to refrain from offering Mr. Rorech a higher price than they had agreed to pay, although the ethical propriety of his conduct is open to question in view of his role in the negotiations. Until a binding contract was entered into, Mr. Rorech had the right to make any disposition of his land which he saw fit to do and, so long as his change of heart was not induced by any fraud or misrepresentation, no cause of action for inducing a breach of contract became resident in the plaintiffs.

"Where a contract is terminable at will or upon notice, no cause of action lies for inducing a termination of the contract, as long as the termination was not accomplished by the defendant's fraud, misrepresentation, or other unfair conduct" (32 NY Jur, Interference, § 22). In principle, the parties here are in the same position. The contract here was terminable at will because it was not in writing and so did not bind Mr. Rorech. Absent "fraud, misrepresentation, or other unfair conduct", the defendant was free to induce Mr. Rorech to sell the property to him.

The judgment should therefore be reversed insofar as it is appealed from, without costs or disbursements, and judgment should be entered in favor of the defendant.

GULOTTA, P. J. (dissenting). In my opinion, a finding of fraud is not indispensable to a holding that a third party is liable for inducing the breach of a voidable contract for the sale of real property where, concededly, the terms of the agreement would have been fulfilled absent the interference of that third party. It is true that the leading case on this subject involved fraud on the part of the wrongdoer (see *Rice v Manley*, 66 NY 82). However, in view of the heightened recognition now given the doctrine of tortious interference with a contract in this State, I do not believe that fraud must necessarily be held to be a *sine qua non* to recovery.

Actually, fraud has no logical relationship to the holding if tortious interference is regarded as an independent wrong in its own right. It has no more relevance to a nonbinding contract than it has to a binding one. In the latter case, it is well settled that fraud plays no role (see *Lamb v Cheney & Son*, 227 NY 418).

In my view, the significant point of difference when dealing with a voidable contract vis-à-vis a binding one, is the willingness on the part of the promisor to perform but for the

wrongful intervention of the defendant. It is that element which makes it equitable and just to treat with it as though it were a binding contract so far as third parties are concerned. In the *Lamb* case the Court of Appeals made the following interesting observation as to the meaning of the word "malicious" as used in these cases (p 422): "The act is malicious when the thing done is with the knowledge of plaintiff's rights and with the intent to interfere therewith. In a legal sense it means a wrongful act, done intentionally, without just cause or excuse. *(Mogul Steamship Co. v McGregor,* 23 Q. B. D. 598.) It does not mean actual malice or ill-will, but consists in the intentional doing of a wrongful act without legal justification. *(Cumberland Glass Mfg. Co. v. De Witt, supra.)* The gist of the action is not the intent to injure, but to interfere without justification with plaintiff's contractual rights with knowledge thereof; or, as was very tersely stated by Lord MACNAGHTEN in *Quinn v. Leathem (supra),* where he said, referring to *Lumley v. Gye (supra):* 'Speaking for myself, I have no hesitation in saying that I think the decision was right, not on the ground of malicious intention,—that was not, I think, the gist of the action,—but on the ground that a violation of legal right committed knowingly is a cause of action, and that it is a violation of legal right to interfere with contractual relations recognized by law if there be no sufficient justification for the interference."

I can see no reason why this language should not be equally applicable to one who deliberately seeks to exploit a deficiency in a contract between two other people, for his own financial benefit.

Of course, where the initiative for repudiating the contract originates with the party who has the right to disaffirm, the situation is different. Under such circumstances, no just claim of tortious interference can be made. To hold otherwise would be to interfere with both the right of the promisor to cancel without penalty and to deal with someone else. As Prosser notes (Law of Torts [4th ed.], p 934): "In order to be held liable for interference with a contract, the defendant must be shown to have caused the interference. It is not enough that he merely has reaped the advantages of the broken contract after the contracting party has withdrawn from it of his own motion. Thus acceptance of an offered bargain is not in itself inducement of the breach of a prior inconsistent contract, and it is not enough that the defendant has done no more than

enter into one with knowledge of the other, although he may be liable if he has taken an active part in holding forth an incentive, such as the offer of a better price or better terms."

In tracing the origins of the action, Prosser notes that it arose from a desire to protect an economic relationship such as existed between a master and his servant and did not require a contract to support it. With respect to the specific problem which concerns us herein, he states (supra, p 932): "The agreement need not, however, be enforceable by the plaintiff as a contract. Even under the old Statute of Labourers, from which the remedy is descended, labor was compulsory, and it was interference with the relation which was the essence of the tort, so that no binding agreement for service was required. The law of course does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes. Accordingly, it usually is held that contracts which are voidable by reason of the statute of frauds, formal defects, lack of consideration, lack of mutuality, or even uncertainty of terms, or harsh and unconscionable provisions, or conditions precedent to the existence of the obligation, can still afford a basis for a tort action when the defendant interferes with their performance."

The case of *Warner Bros. Pictures v Simon* (21 AD2d 863, affd 15 NY2d 836), relied upon by the majority, is distinguishable from the case at bar in that it was not established in that case that the parties would have performed the contract but for the interference of the third party.

It is to be observed that it does little credit to the appellant that, in purchasing the property herein, he took advantage of his position as attorney to the seller and that, in an apparent attempt to conceal the transaction, he took title under his former name.

I would affirm the judgment insofar as it directed a conveyance, since I do not regard this as a judgment for specific performance, but rather as the suitable molding of a remedy to fit the situation by a court of equity. However, there should be a retrial on the issue of the alternative award of damages in the event a conveyance cannot be made. There does not appear to have been any basis in the proof for the quantum of damages fixed by the trial court.

MARTUSCELLO, J. (dissenting). I concur in the views expressed in the dissenting opinion of Presiding Justice GULOTTA as to the sufficiency of the cause of action for tortious interference with contract. However, I would modify the judgment under review by deleting therefrom the direction for a reconveyance of the property and would remand for a new trial as to damages.

The direction for a reconveyance violates the Statute of Frauds and, moreover, the cause of action for such relief asserted against the appellant was dismissed upon his motion at the trial.

We should not permit that direction to remain in the judgment "since equity will not suffer the making of a vain order" (see *Pennington v Ziman,* 13 AD2d 769).

LATHAM and COHALAN, JJ., concur with SHAPIRO, J.; GULOTTA, P. J., dissents and votes to modify the judgment by deleting the alternative award of damages contained therein and remanding the action to Special Term for a new trial to fix the amount of such alternative award, with an opinion; MARTUSCELLO, J., dissents and votes to modify the judgment by deleting therefrom (1) the direction for the reconveyance of the property and (2) the alternative award of damages and remanding the action to Special Term for a new trial to fix the amount of such alternative award, with an opinion.

Judgment of the Supreme Court, Suffolk County, entered September 17, 1975, reversed insofar as appealed from, without costs or disbursements, and complaint dismissed.