**SPECIAL EVENT ENTERTAINMENT,**
Plaintiff,

v.

**ROCKEFELLER CENTER, INC., Radio City Music Hall Corp., Nelson A. Rockefeller, Urban Development Corporation, Urban Development Corporation–Civic Hall Preservation Project Corp., Robert T. Dormer and Mary Ann Krupsak, Lieutenant Governor of the State of New York, Defendants.**

No. 78 Civ. 2162 (KTD).

United States District Court,
S. D. New York.

Sept. 11, 1978.

Parker, Auspitz, Neesemann & Delehanty, New York City, for plaintiff; John M. Delehanty, Carolyn Lewis Ziegler, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants Rockefeller Center, Inc., Radio City Music Hall Corp. and Nelson A. Rockefeller; Edward J. Reilly, New York City, of counsel.

Schulte & McGoldrick, New York City, for defendants New York State Urban Development Corp. and Civic Hall Preservation Project Corp.; Robert Kasanof, Bart M. Schwartz, Mark A. Levine, New York City, of counsel.

Daniel J. Kornstein, New York City, for Robert T. Dormer; Daniel J. Kornstein, New York City, of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Mary Ann Krupsak; Albert H. Blumenthal, Martin Stein, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is a diversity action brought by plaintiff, Special Event Entertainment [hereinafter referred to as "SEE"], a California corporation, against Rockefeller Center, Inc. [hereinafter referred to as "RCI"], Radio City Music Hall Corp. [hereinafter referred to as "Radio City"], Nelson A. Rockefeller, the Urban Development Corporation [hereinafter referred to as "UDC"], the Urban Development Corp.–Civic Hall Preservation Project Corp. [hereinafter referred to as "CHPPC"],[1] Robert T. Dormer[2] and Mary Ann Krupsak, Lieutenant Governor of the State of New York, all of whom are New York defendants. SEE alleges that it entered into a contract with RCI to lease the Radio City Music Hall for a one-year period, subject to SEE's option to continue the lease over a longer term. SEE has allegedly developed a closed circuit television distribution system which will broadcast live entertainment from around the world to various theatres in the United States. According to SEE, Radio City Music Hall is "uniquely suited to be an 'origination theatre' for live entertainment to be distributed on the SEE Theatre Network." Complaint ¶ 9.

The complaint further alleges that at the behest of Radio City, SEE's executives surveyed the Music Hall to determine its feasibility as an "origination theatre" for the SEE Theatre Network. Thereafter, RCI's president, Alton Marshall, allegedly offered SEE a contract to lease the Music Hall for $25,000 per week for one year, with a unilateral option in SEE to continue the lease beyond the original one year period. No written lease was executed, nor was one tendered by RCI to plaintiff although the parties allegedly agreed that a written lease would be prepared immediately with execution to follow at a future date.[3]

The complaint further alleges that, on information and belief, RCI, Radio City and Rockefeller (collectively referred to as the Radio City defendants) "entered into a conspiracy later joined by UDC, CHPPC, Dormer and Krupsak (collectively referred to as the State defendants), to eliminate SEE's rights under the contract and to injure SEE in its business and property." Complaint ¶ 26. Allegedly, an additional objective of this conspiracy was to persuade the public that the Music Hall was not economically viable, "thus, clearing the way for RCI's demolition of the Music Hall and the erection of a large office tower which would generate additional profits for RCI and the Rockefeller family." Id. at ¶ 27.

Although SEE allegedly continued to press RCI for delivery of the written lease, delivery was never effected and RCI remained silent with regard to a public announcement of SEE's lease. In the meantime, RCI had announced the closing of Radio City which evoked considerable public controversy and resulted in efforts, led by defendant Krupsak, to have the Music Hall designated as a landmark.

The complaint further alleges that in late March or early April of 1978 defendants Krupsak, Dormer, UDC, and CHPPC, with knowledge of RCI's agreement with SEE,

1. UDC is a corporation organized pursuant to the New York State Urban Development Corp. Act, for the purpose of rehabilitating deteriorating urban areas in New York State. CHPPC, a wholly owned subsidiary of UDC, was organized for the purpose of subsidizing the operation of Radio City Music Hall.

2. Robert T. Dormer is Acting Chief Executive Officer and Executive Vice President of U.D.C.

3. Radio City Music Hall had apparently been losing money in the recent past and RCI had intended to close it. Execution of the contract with SEE was allegedly delayed, as was the public announcement thereof, so that SEE would not be involved in any negative publicity generated as a result of the announcement to close the Music Hall. Thereafter, when the lease was announced, SEE would allegedly benefit from the favorable publicity resulting from such announcement.

approached RCI with an offer to have UDC, through its subsidiary, CHPPC, subsidize the operation of the Music Hall. RCI agreed to this proposal and thereafter advised SEE that its lease would not be forthcoming. As a result of this advice, SEE commenced the instant lawsuit asserting the following seven claims:

1. That it is entitled to a declaratory judgment that the lease between SEE and RCI is valid and to specific performance thereof;

2. That UDC and CHPPC acted beyond the scope of their authority and wasted public funds for the benefit of the Rockefeller family. SEE seeks to enjoin the continued performance under the agreement;

3. That SEE is entitled to damages from the Radio City defendants for breach of the lease;

4. That SEE is entitled to damages from UDC, CHPPC, Dormer, Krupsak, and Rockefeller for tortious interference with the lease;

5. That SEE should recover damages from UDC, CHPPC, Dormer and Krupsak for their conspiring with RCI and Radio City to breach the lease;

6. That SEE relied to its detriment on the promises of RCI and Radio City and expended hundreds of hours and thousands of dollars in preparing to take possession of the Music Hall;

7. SEE further charges all the defendants with *prima facie* tort for intentionally conspiring to injure SEE in its business or property without justification.

Defendants have moved, pursuant to F.R. C.P. 12(b) to dismiss the complaint for failure to state a claim upon which relief can be granted.[4] They assert as grounds for their motion that (i) the oral contract which SEE has alleged falls within the statute of frauds; (ii) SEE lacks standing to challenge the expenditure of public moneys; and (iii) the claims of conspiracy and tortious interference are insufficient.

*I. The Statute of Frauds*

Defendants urge that SEE has alleged an oral lease falling squarely within the Statute of Frauds. New York's General Obligations Law § 5–703 (McKinney 1964) sets out the state law relating to real property:

1. An estate or interest in real property, other than a lease for a term not exceeding one year . . . cannot be created, granted, assigned, surrendered or declared, unless . . . by a deed . . . .

2. A contract for the leasing for a longer period than one year . . . is void unless the contract or some note or memorandum thereof . . . is in writing, subscribed by the party to be charged . . . .

Thus, it is clear that to be enforceable a lease of real property for more than one year must be memorialized in some kind of writing which is signed by the party to be charged.

In the instant case, SEE has alleged an agreement to lease the Music Hall for a period of one year, subject to SEE's option to continue the lease over a longer term. SEE also claims that a formal lease was prepared. Conspicuously absent from the complaint, however, is any allegation or intimation that this lease was ever executed by RCI. Thus, SEE's suggestion, in its memorandum of law opposing the instant motions, that a writing satisfying the Statute of Frauds exists is not borne out by a fair reading of the complaint.

SEE further urges, in opposition to defendants' motions to dismiss, that the alleged lease is capable of performance within a year. According to SEE, the mere fact that a one-year agreement may contain an option to renew does not subject it to the Statute of Frauds. While this statement may be an accurate reflection of the general state of the law, *see Ward v. Hasbrouck,*

---

4. SEE argues that the motion to dismiss for failure to state a claim is premature and should await discovery. Such a motion, however, tests only the sufficiency of the allegations in the complaint and is properly made before the answer or discovery.

169 N.Y. 407, 62 N.E. 434 (1902), it ignores those cases where the option to renew is solely with the plaintiff. *See, e. g., Belfert v. Peoples Planning Corporation of America,* 22 Misc.2d 753, 199 N.Y.S.2d 839, 842 (Sup.Ct.N.Y.County 1959) *aff'd,* 11 A.D.2d 760, 202 N.Y.S.2d 101 (1st Dep't 1960) *aff'd,* 11 N.Y.2d 755, 226 N.Y.S.2d 693, 181 N.E.2d 630 (1962).

In *Belfert,* the Court refused to enforce an oral agreement where the option to renew was solely with the plaintiff. Quoting from *Harris v. Home Indemnity Co.,* 6 A.D.2d 861, 175 N.Y.S.2d 603, 604 (1st Dep't 1958) the Court observed that where the right to renew is limited unilaterally to the plaintiff, "it is illusory, from the point of view of the defendant, to consider the contract terminable or performable within one year."

It is the party to be charged with the contract whom the Statute of Frauds is designed to protect. Were plaintiff to have a right, based only upon an oral representation, to unilaterally extend the contract for more than one year, the defendant would be at the mercy of such representation without any protection from possible fraud. Thus, the rule that unilateral control in the hands of plaintiff brings the contract within the Statute of Frauds furthers the salient objectives of the statute. Accordingly, I cannot agree with plaintiff's characterization of the rule as "senseless and inequitable." Plaintiff's Memorandum at 28. Nor do I believe that such rule is applicable only to those situations involving employment contracts. *Belfert* makes no distinction between employment contracts and other types of agreements but rather lays down a sensible rule for general application. SEE's alleged lease falls within this rule and thus is within the Statute of Frauds.

## II. Equitable Estoppel

I must now determine whether plaintiff's allegations are sufficient to invoke the doctrine of equitable estoppel [5] and thus avoid the effect of the Statute of Frauds. An equitable estoppel will arise where one party rightfully relies upon the word or deed of another party and in "so relying, changes his position to his injury." *Metropolitan Life Insurance Co. v. Childs,* 230 N.Y. 285, 292, 130 N.E. 295, 298 (1921). The essential elements of equitable estoppel are:

1. An act constituting a concealment of facts or a false misrepresentation;

2. An intention or expectation that such acts will be relied upon;

3. Actual or constructive knowledge of the true facts by the wrongdoer;

4. Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.

*See New York State Guernsey Breeders' Co-op v. Noyes,* 260 App.Div. 240, 22 N.Y.S.2d 132 (3rd Dep't), *modified on other grounds,* 284 N.Y. 197, 30 N.E.2d 471 (1940). *See generally Philo Smith & Co., Inc. v. USLIFE Corporation,* 420 F.Supp. 1266 (S.D.N.Y.1976), *aff'd,* 554 F.2d 34 (2d Cir. 1977).[6]

Defendants urge that SEE has failed to allege the essential elements of equitable estoppel. However, a fair reading of the

---

5. SEE does not appear to dispute defendants' assertion that past performance has not been sufficiently pleaded. Accordingly, I need not address that aspect of defendants' motion.

6. In *Philo Smith & Co., Inc. v. USLIFE Corporation,* 420 F.Supp. 1266 (S.D.N.Y.1976), *aff'd,* 554 F.2d 34 (2d Cir. 1977), this Court directed a verdict for defendant, following a jury trial, on the grounds that plaintiff had failed to establish all the elements of promissory estoppel. The Court of Appeals affirmed on the basis of plaintiff's failure to establish substantial injury without passing on the legal or factual basis for the District Court's holdings with regard to the other elements. In this connection I note that the requirement that the reliance be "unequivocally referable" to the contract in question appears to have application to the doctrine of part performance rather than equitable estoppel. See *Bright Radio Laboratories v. Coastal Commercial Corp.,* 4 A.D.2d 491, 494, 166 N.Y.S.2d 906, 909 (1st Dep't 1957), *aff'd,* 4 N.Y.2d 1021, 177 N.Y.S.2d 526, 152 N.E.2d 543 (1958); *Bakhshandeh v. American Cyanamid Co.,* 8 A.D.2d 35, 185 N.Y.S.2d 635 (1st Dep't 1959); *Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273 (1922).

complaint reveals that SEE has pleaded each of these elements sufficiently to withstand a motion to dismiss.

■ SEE asserts that in the course of its many communications with the Radio City defendants it was misled into believing that it was only a matter of time before the lease would be executed and the public announcement of the agreement made. The import of the complaint is that the Radio City·defendants did not intend to comply with the agreement, yet permitted SEE to go forward with its plans for the Music Hall. This alleged deception purportedly continued until March 31, 1978 when RCI advised SEE that it would not deliver the lease due to the public outcry generated by the announcement of the Hall's closing. Shortly thereafter the defendants announced their plans for the UDC subsidy. According to SEE, these plans had been developing since late March or early April. The suggestion is that these negotiations began at a time when SEE still believed it had rights to a lease, and were concealed from it even when RCI advised SEE that it did not intend to deliver the lease. According to SEE, it expended hundreds of man hours and thousands of dollars preparing for its anticipated possession of the Music Hall which allegedly was to be a central facility in the SEE Theatre Network. In view of all these allegations, I believe that a claim based on the doctrine of equitable estoppel has been stated. The burden of proof will, of course, weigh heavily on plaintiff since the Statute of Frauds is not easily avoided. *See Philo Smith & Co., supra,* 554 F.2d at 36. However, giving the complaint the liberal construction to which it is entitled, *see* 2A Moore's Federal Practice ¶ 12.08 at 2274 (2d ed. 1975), I am not prepared to foreclose plaintiff's proof on the questions raised therein.

*III. Standing*

■ Defendants also allege that SEE lacks standing to challenge either the acts of UDC and CHPPC as *ultra vires* or to maintain an action against those entities, the State or the City, for waste of public funds. Defendants urge that since SEE does not fall within the class of persons (citizen-taxpayers) authorized to challenge the disposition of state moneys as illegal, it may not bring such a challenge. See N.Y. State Fin.Law § 123 *et seq.* (McKinney Supp.1977–78); N.Y.Gen.Mun.Law § 51 (McKinney's § 51).

SEE responds to this attack on its standing by suggesting that it sues not as a taxpayer, but as a person "directly harmed by the activities of public officials." Plaintiff's Memorandum at 42. This alleged injury does not, however, give it standing to challenge the allocation of funds as either *ultra vires* or wasteful. SEE is not a citizen or taxpayer, and such activities do not directly concern it since it has not contributed to the public treasury. SEE's true concern is with the allegedly *tortious* acts of the State, not with its disposition of funds, nor that of New York City.[7] Accordingly, SEE's second cause of action must be dismissed.

*IV. Tortious Interference*

SEE's fourth claim charges that UDC, CHPPC, Dormer and Krupsak tortiously interfered with its contract with the Radio City defendants. Defendants ask me to dismiss this claim on the ground that a contract unenforceable by virtue of the Statute of Frauds may not be the basis for an action founded upon breach of such contract. Defendants further assert that SEE has failed to plead the requisite elements of tortious interference and that, in any event, the actions of Krupsak, Dormer, UDC and CHPPC were taken in the public interest and therefore justified.

**7.** The case upon which SEE relies in support of its standing, *American Consumer Industries v. City of New York,* 28 A.D.2d 38, 281 N.Y.S.2d 467 (1st Dep't 1967) is inapposite. In the first place, plaintiff in that case did not challenge the expenditure of public funds but rather attacked a municipal regulation which adversely affected it. Moreover, the plaintiff therein, although a New Jersey corporation, was duly qualified to do business in New York and thus, arguably, could be considered a taxpayer, if such were considered a prerequisite to suit in that case.

Since I have found that the contract in question may be enforceable by virtue of an estoppel, I need not reach defendants' arguments concerning tortious interference with unenforceable contracts. I, therefore, turn to their second assertion—that SEE has failed to allege the requisite elements of tortious interference.

■ The elements of tortious interference with a contract are as follows: there must be a valid contract of which defendants have knowledge, intentional interference with that contract without justification and damages. In addition, courts have required plaintiff to show that but for the unlawful actions of defendants the contract would have been performed. *Bryce v. Wilde*, 39 A.D.2d 291, 333 N.Y.S.2d 614 (3d Dep't), *aff'd*, 31 N.Y.2d 882, 340 N.Y.S.2d 185, 292 N.E.2d 320 (1972). Since I find that SEE has failed to plead one of the requisite elements, I need not address each of them separately.

■ Defendants assert that SEE has not alleged that the lease with RCI would have been consummated but for the unlawful activities of the State defendants. *Bryce, supra*, 333 N.Y.S.2d at 616. This, I believe, is a flaw fatal to the claim against those defendants. It is, of course, true that the pleadings need not detail the exact circumstances which show that the contract would have been completed, *see Williams & Co. v. Collins, Tuttle and Co.*, 6 A.D.2d 302, 176 N.Y.S.2d 99 (1st Dep't 1958). However, there must be at least an allegation that there would not have been a breach but for the activities of defendants. *Id.*

SEE's attempts to distinguish those cases requiring "but for" pleading as involving solely precontractual negotiations are unavailing. Rather, it appears that many involved contracts that were unconsummated, as in the case at bar. *See, e. g., Williams, supra; Livoti v. Elston*, 52 A.D.2d 444, 384 N.Y.S.2d 484 (2d Dep't 1976). In *Livoti* plaintiff sued to enforce an oral agreement for the sale of property. In that case there was ample evidence that the sale would have been consummated but for the activities of defendant. In the instant case, by contrast, there is a conspicuous absence of any allegation that the contract would have been performed were it not for defendants' acts. Indeed, the pleadings themselves reveal that the Radio City defendants were not disposed toward honoring their alleged commitment even before the State defendants entered the negotiations. See Complaint ¶¶ 29–32. Accordingly, plaintiff's fourth claim should be dismissed.

## V. The Conspiracy Claims

■ Defendants finally challenge the sufficiency of the claims based on an alleged conspiracy. In the fifth claim, SEE seeks to recover for a conspiracy to breach its contract with RCI. It is settled, however, that "[o]ne does not have a cause of action against another contracting party for conspiracy to breach the agreement between them." *Bereswill v. Yablon*, 6 N.Y.2d 301, 306, 189 N.Y.S.2d 661, 664, 160 N.E.2d 531, 533 (1959). *See also North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968). Since plaintiff does not appear to contest the insufficiency of this cause of action as against either the Radio City or the State defendants, the fifth claim is dismissed. *See Toffel v. Odzer*, 154 N.Y. S.2d 1002 (Sup.1956).

■ In the seventh claim, SEE charges a conspiracy "to injure [it] in its business or property without excuse or justification." Complaint at ¶ 78. By this allegation, SEE has sought to state a claim for *prima facie* tort. The allegation of *prima facie* tort in this case must be bottomed on an infliction of intentional harm on SEE's business without excuse or justification by an act or series of acts which would otherwise be lawful. *Ruza v. Ruza*, 286 App.Div. 767, 146 N.Y.S.2d 808 (1st Dep't 1955).

■ Defendants again challenge SEE's allegations, asserting that all that has been stated is that RCI and Radio City breached an alleged agreement and entered into a subsequent agreement with another party. In fact, the complaint says much more than this. It charges Radio City defendants with

conspiring to injure SEE by purposely leading it on regarding the contract for use of the Music Hall, while simultaneously pursuing a course of conduct that would eliminate SEE's rights thereunder. These allegations are sufficient to make out a cause of action in tort against defendants.

For the foregoing reasons, defendants' motion to dismiss the second, fourth and fifth causes of action is granted. The motions to dismiss the remaining claims are denied.

Settle order on ten days' notice.