37 F.3d 41
 GENERAL ELECTRIC CAPITAL CORPORATION, as Successor in
Interest to General Electric Credit Corporation,
Plaintiff-Appellant,
v.
Eva ARMADORA, S.A., and Christina Armadora, S.A.,
Defendants-Appellees.
 No. 1573, Docket 93-9282.
 United States Court of Appeals,
Second Circuit.
 Argued April 26, 1994.
Decided Sept. 22, 1994.
 
 Van Graafeiland, Circuit Judge, concurred in result.
 Mark C. Flavin, New York City (Alan Heblack, Andrea Fischer, Haight, Gardner, Poor & Havens, of counsel), for plaintiff-appellant.
 James P. Rau, Cardillo & Corbett, New York City, for defendants-appellees.
 Before: FEINBERG, VAN GRAAFEILAND and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 General Electric Capital Corporation ("GECC") appeals from a judgment entered following a bench trial before Judge Motley directing Eva Armadora, S.A., and Christina Armadora, S.A. (collectively "Armadora") to pay GECC $492,418.50 in principal, interest, and attorneys' fees for breach of contract. GECC sought an additional sum of over two million dollars based upon the "Special Interest Payment" term of the contract. The district court denied this relief because it found the "Special Interest Payment" term to be ambiguous and construed it against GECC based on extrinsic evidence. We disagree. Whatever the original intent underlying the "Special Interest Payment," Armadora's conduct estops it from challenging GECC's interpretation. For that reason we reverse. We remand for a recalculation of attorney's fees.
 
 
 2
 On February 28, 1986, Armadora obtained a three-year loan from GECC to pay for two tanker ships that Armadora's principal, T. Peter Pappas, had commissioned from a Spanish shipyard. In return for financing equal to the total value of the vessels, $18,000,000, Armadora agreed to make a payment over and above the repayment of the loan following any sale or refinancing of the vessels. Section 2.09 of the Loan Agreement, entitled "Special Interest Payment," thus specified that:
 
 
 3
 (a) After the principal of, and interest at the Interest Rate, on a Note and any other amounts required ... have been repaid or prepaid in full ... [Armadora] shall pay to GECC, as additional interest ("Special Interest Payment") on the Loan in respect of which such Note was issued:
 
 
 4
 . . . . .
 
 
 5
 (ii) On the date of sale or Loss Payment Date respecting a Vessel, 30% of the excess of (x) the total gross proceeds received from the sale, loss or other disposition of such Vessel received by [Armadora] over (y) the aggregate of (A) the amount of expenses paid or incurred by [Armadora] and directly related to the sale, loss, or other disposition of the Vessel and (B) any amounts due or paid which are described in clauses (i) through (iv) of the definition of Excess Income.
 
 
 6
 The Loan Agreement defined "Excess Income" as follows:
 
 
 7
 "Excess Income " for each Vessel during any period shall mean ... all earnings received in respect of such Vessel ... less [certain operating expenses] ... plus (x) as to any refinancing occurring during such period, the principal amount of any increase over existing indebtedness of [Armadora] at the time of such refinancing and (y) any interest earned by [Armadora] less the aggregate of (i) commissions paid to independent charter brokers, (ii) operating expenses directly related to such Vessel including drydocking expenses paid by the relevant borrower under the Bareboat Charter, (iii) management fees due to a manager under a management contract approved by GECC, (iv) principal and interest paid for the relevant period in respect of any outstanding indebtedness respecting such Vessel.
 
 
 8
 In September 1987, Armadora sought to refinance the loan, pre-pay it, and terminate its agreement with GECC. Pursuant to the Loan Agreement, the pre-payment and termination required GECC's consent. Pappas engaged Paul Gurtler to negotiate for this consent on Armadora's behalf with GECC's Steven Gonzalez. In the course of these negotiations, Gonzalez and Gurtler discussed the timing of the termination, its treatment as a "deemed sale" in the amount of $26,400,000, and the calculation of the Special Interest Payment. At trial, both Gonzalez and Gurtler testified that Gonzalez had calculated this payment for Gurtler as approximately $3,000,000. On October 15, 1987, Gurtler sent a letter to Gonzalez confirming the substance of these discussions, including a reference to the "30% 'profit sharing' element," but without referring to Gonzalez's calculation of approximately $3,000,000 for that payment. On October 27, 1987, Gonzalez responded in a letter to Gurtler that "state[s] my understanding of the current state of negotiations." This letter spelled out Gonzalez's calculation of the Special Interest Payment as follows:
 
 
 9
 The amount of the 30% "Special Interest Payment" referred to in the Loan Agreement shall be fixed at 30% of the difference between $26.4MM ... less the aggregate loan principle balance on the Vessels on the date of payment.
 
 
 10
 Under its interpretation, GECC would permit a deduction from the deemed sale price only of the $14,951,484 of outstanding principal at the time of repayment. At trial, Pappas conceded that, were the calculation of the Special Interest Payment embodied in the October 27 letter to govern, GECC would be entitled to a Special Interest Payment in excess of $3,000,000.
 
 
 11
 Gonzalez's October 27 letter closed with a request for Gurtler to discuss the matter with Pappas and, if Pappas was "in general agreement," to have counsel prepare a written agreement for GECC to review and execute. Following the receipt of the October 27 letter, Gurtler and Gonzalez spoke again and, as Gurtler testified, Gonzalez once again referred to the approximately $3,000,000 he expected as the Special Interest Payment. According to Gurtler, Gurtler responded that the Loan Agreement provided for "certain deductions" but that Gonzalez had characterized those as "minor."
 
 
 12
 On November 12, 1987, Pappas sent Gonzalez by telecopier the draft of an addendum that would become "Addendum 1" to the Loan Agreement. Pappas included a cover letter to Gonzalez that stated, "THIS ADDENDUM FORMALIZES THE AGREEMENT WHICH WE HAVE REACHED AS RECAPITULATED IN YOUR LETTER ADDRESSED TO MR. PAUL GURTLER DATED OCTOBER 27, 1987." In Addendum 1, GECC consented to the pre-payment and termination of the agreement. However, Addendum 1 failed to specify the method of calculation of special interest and merely stated that, "[w]ith respect to the Special Interest Payment provided for in Section 2.09 of the Loan Agreement this transaction shall be treated as a sale to a third party on the date of pre-payment with the sale price fixed at $26.4 million...." It concluded that "[a]ll other terms and conditions of the Loan Agreement dated as of February 28, 1986 shall remain in full force and effect."
 
 
 13
 Just before the execution of Addendum 1, Gonzalez spoke with Robert Miliaresis, an officer of Armadora, to discuss the language of Addendum 1, including the language referring to the Special Interest Payment. Gonzalez testified that Miliaresis characterized the deductions as minor. Miliaresis denied this but admitted that he had neither sent Gonzalez his own calculation of the deductions applicable to the Special Interest Payment nor directly disputed GECC's calculation. He did testify that he informed Gonzalez that Armadora would insist that the Loan Agreement would govern the terms of the pre-payment.
 
 
 14
 On November 17, 1987, GECC signed Addendum 1, thus giving up its right to block pre-payment and termination. Soon thereafter, Armadora began openly to insist upon an interpretation of Section 2.09 at odds with that embodied in the October 27 letter. In a telephone conversation in late January 1988, Miliaresis told Gonzalez that Armadora wanted to deduct the entire amount of the principal and interest, $21,000,000. As the district court found, this was the first time that Armadora revealed to GECC its interpretation of Section 2.09. Gonzalez responded to Pappas once again that GECC's interpretation of the Special Interest Payment calculation was that Armadora would be allowed to deduct only the present outstanding balance of approximately $15 million. Pappas wrote back indicating that he disagreed with GECC's calculation and that "[t]he amount of the special interest payment was to be calculated strictly in accordance with the Loan Agreement." Following this exchange, on February 26, 1988, the parties signed a second addendum ("Addendum 2") which defined the Special Interest Payment by reference to Addendum 1 and the Loan Agreement and stated that
 
 
 15
 [a]s of the date hereof [Armadora] and GECC have not agreed on the aggregate amount of the Special Interest Payment to be made, and [Armadora] and GECC covenant[ ] and agree[ ] to negotiate in good faith to reach mutually acceptable sum which shall be payable to GECC as the Special Interest Payment.
 
 
 16
 However, the agreement added that Armadora's delivery of letters of credit in the amount of $3,000,000 with $1,000,000 drawable by GECC between 180 days and 210 days after the execution of Addendum 2 and a personal guarantee by Pappas of $400,000 were without prejudice to Armadora's position as to the amount of the Special Interest Payment, and that,
 
 
 17
 [t]he delivery by GECC of the documents [releasing the mortgage in return for payments of principal and interest] and the acceptance by GECC of the Letter of Credit and the Guaranty are entirely without prejudice to GECC's position as to the amount of the Special Interest Payment due under the Loan Agreement.
 
 
 18
 The district court held that Section 2.09 of the Loan Agreement was ambiguous and therefore susceptible to interpretation through examination of extrinsic evidence. General Elec. Capital Corp. v. Eva Armadora, S.A., 821 F.Supp. 1530, 1545 (S.D.N.Y.1993). Following extensive testimony and examination of the letters exchanged by the parties, the district court held that Armadora was entitled to deduct the principal and interest already paid to GECC during the loan period as well as the principal still outstanding. Id. at 1550. The district court held that Gonzalez's letter of October 27 and Pappas' response of November 12 "did not constitute an offer and acceptance embodying a new agreement that superseded the provisions of section 2.09 in the Loan Agreement." Id. at 1546. Under this holding, Armadora owed GECC a balance due on the Special Interest Payment of $325,862.90 plus interest. The district court also awarded GECC attorneys' fees in the amount of $30,000 for successfully arguing that Armadora could not deduct unapproved management fees from the calculation of the Special Interest Payment.
 
 
 19
 The district court focused on the question of whether Section 2.09 of the Loan Agreement was ambiguous, concluded that it was, and construed it against GECC based on extrinsic evidence. The district court's view in this regard may be correct, but we do not regard those issues as dispositive.
 
 
 20
 The parties agree that Gonzalez's letter of October 27 unambiguously spelled out GECC's interpretation of the proper method for calculating the Special Interest Payment. Pappas' November 12 letter stated his assent to "THE AGREEMENT WHICH WE HAVE REACHED AS RECAPITULATED IN YOUR LETTER ADDRESSED TO MR. PAUL GURTLER DATED OCTOBER 27, 1987." A more explicit adoption of GECC's interpretation would be difficult to draft.
 
 
 21
 Arguably, these events resulted in an agreement on the correct interpretation of Section 2.09. The exchange of letters thus might constitute an offer and acceptance, while GECC's consent to pre-payment was undeniably a valuable consideration. Armadora argues, and the district court agreed, that the reference to the terms of the Loan Agreement in the Addenda merely continued the original ambiguity and that there was no meeting of the minds upon the correct interpretation of the Loan Agreement. However, Pappas had agreed to Gonzalez's view of Section 2.09 in the November 12 cover letter, and Addendum 1's unelaborated reference to Section 2.09 might simply be viewed as incorporating the parties' agreed resolution of its ambiguity. The district court appears to have found otherwise, however, but, because we believe that Armadora is in any event estopped from challenging GECC's interpretation of Section 2.09, we need not decide whether the district court's findings are clearly erroneous.[1]
 
 
 22
 This is not a case in which parties to a contract have disputed the meaning of a provision, arguably resolved it, disagreed again, and, having preserved their rights, go to court. In such a case, the court would determine, first, whether the parties reached a binding resolution of the dispute, and, if not, would go on to determine the meaning of the original provision. This case differs because GECC gave up valuable contractual rights in signing Addendum 1, and GECC claims that even if there was no meeting of the minds as a result of the November 12 letter, Armadora is now estopped as a result of its own conduct from challenging GECC's view of Section 2.09.
 
 
 23
 Under New York law, equitable estoppel requires a showing of
 
 
 24
 (1) An act constituting a concealment of facts or a false misrepresentation;
 
 
 25
 (2) An intention or expectation that such acts will be relied upon;
 
 
 26
 (3) Actual or constructive knowledge of the true facts by the wrongdoers;
 
 
 27
 (4) Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.
 
 
 28
 Special Event Entertainment v. Rockefeller Ctr., 458 F.Supp. 72, 76 (S.D.N.Y.1978) (citations omitted); see Broadworth Realty Assocs. v. Chock 336 B'way Operating, Inc., 168 A.D.2d 299, 562 N.Y.S.2d 630, 632 (1990). We believe that these factors have been shown in the present case.
 
 
 29
 Whatever the ultimate merits of GECC's interpretation of Section 2.09 as a matter of contract law, it at all times made its view clear to Armadora that it expected to receive a special interest payment in the range of $3,000,000 to $3,500,000 in exchange for permitting pre-payment and termination. Armadora in turn failed to state its view of the proper interpretation until January 1988, after GECC had given up its right to block pre-payment by agreeing to Addendum 1. Instead, Armadora's representative made ambiguous statements that they intended to be governed by the terms of Section 2.09. They never stated exactly what deductions they believed permissible or specified the amount Armadora expected to pay as special interest. At the time GECC signed Addendum 1 and gave up its right to block pre-payment, it had in hand the November 12 cover letter. Any reasonable reader of that letter would view it as an explicit adoption by Armadora of the terms of the October 27 letter regarding the meaning of Section 2.09. To be sure, the attached Addendum did not track the letter. But it also did not facially contradict it by stating Armadora's view that it had a right to deduct the paid and unpaid principal and interest, resulting in a special interest payment of less than one-third of what GECC expected--and what Armadora knew GECC expected--to receive.
 
 
 30
 Silence in the face of an explicit contrary assumption by an innocent party may constitute a concealment of facts or a false misrepresentation for estoppel purposes. See, e.g., Payroll Express Corp. v. Aetna Casualty & Sur. Co., 659 F.2d 285, 290 (2d Cir.1981); Broadworth Realty Assocs., 562 N.Y.S.2d at 632. Armadora's silence in the face of GECC's assertion of its interpretation of Section 2.09 of the Loan Agreement falsely misrepresented its intent to challenge that calculation. The November 12 cover letter, by appearing to adopt the terms of Gonzalez's letter of October 27, affirmatively misrepresented Armadora's intent, a misrepresentation upon which GECC then relied to its detriment in forgoing its right to block the pre-payment of the loan. Pappas admitted that the method of calculation embodied in the October 27 letter differed substantially from the yet unannounced method he had decided to insist upon. He thus had actual knowledge of the true facts. Finally, Armadora's failure to assert its own position until GECC had given away its right to block pre-payment reflects an intent to cause GECC to rely upon the misleading November 12 cover letter.
 
 
 31
 For the reasons stated above, we reverse the district court's order and remand to the district court for the calculation of the amount owed by Armadora, interest on this amount, and the recalculation of attorneys' fees based on GECC's successful assertion of its larger claim.
 
 VAN GRAAFEILAND, Circuit Judge:
 
 32
 I concur in the result.
 
 
 
 [1]
 Much of the district court's conclusion rests primarily on the view that the November 12 cover letter has no legal force because it stated that the Addendum was to be the formal agreement and described the October 27 letter as a recapitulation, thus suggesting that the October 27 letter is "non-binding." The language of the November 12 letter, however, seems plainly to say that the parties had "reached" an "agreement" that is "recapitulated" in the October 27 letter, and the Addendum is intended to formalize that "agreement."